# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| **BILLY MARQUIS,** *et al.*, | § | |
| **Plaintiffs,** | § § § | |
| **v.** | § | **Civil No. 4:19-cv-626-RWS-KPJ** |
| **KHOSROW SADEGHIAN and AMY JO SADEGHIAN,** | § § § § | |
| **Defendants.** | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Plaintiffs Billy Marquis, Alexis Marquis, and Anthony Marquis' Opposed Motion for Sanctions (Dkt. 71) and Supplement to Opposed Motion for Sanctions (Dkt. 77) (collectively, the "Motions for Sanctions"). Defendants Khosrow Sadeghian and Amy Jo Sadeghian (collectively, "Defendants") filed two responses: the first response was filed by Shabaz Nizami ("Nizami"), Defendants' former counsel of record (Dkt. 80), and the second response was filed by Defendants proceeding *pro se* (Dkt. 82). Plaintiffs then filed a reply (Dkt. 86). The Court ordered supplemental briefing, which the parties timely submitted. *See* Dkts. 117, 119, 123, 124. The Court also held eight hearings, seven of which addressed the underlying conduct giving rise to the Motions for Sanctions. *See* Minute Entries for July 20, August 26, October 1, November 19, November 24, December 8, and December 18, 2020. In the eighth hearing, the Court heard oral argument on the Motions for Sanctions. *See* Minute Entry for July 22, 2021.

Having considered the arguments, the evidentiary record, and applicable authorities, the Court finds the Motions for Sanctions (Dkts. 71, 77) are hereby **GRANTED IN PART** and **DENIED IN PART**.

# I.   <u>BACKGROUND</u>

## A.  FACTUAL ALLEGATIONS

Plaintiffs allege Defendants own over one thousand properties in Texas and other states, which they purchase, sell, and lease to generate income. Dkt. 15 at 1–2. Plaintiffs allege that, in September 2014, Defendants recruited them from Houston, Texas, to the North Texas region to work for Defendants and live in one of Defendants' properties. *Id.* at 2–3. After Plaintiffs arrived, Defendants allegedly exerted control over Plaintiffs, kept them "poverty-stricken" such that they could not leave, and overall, treated Plaintiffs "as though they were slaves." *Id.* at 1–2, 4.

On August 27, 2019, Plaintiffs filed an Original Complaint (Dkt. 1), which was superseded by a First Amended Complaint (Dkt. 12) and a Second Amended Complaint (Dkt. 15). The Second Amended Complaint asserts three causes of actions against Defendants: (1) willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203 *et seq.*; (2) violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.46; and (3) negligent injuring of Plaintiff Billy Marquis. *See* Dkt. 15 at 5–8.[1] Plaintiffs' FLSA claim seeks certification of a collective action, which, if granted, would be comprised of current and former employees of Defendants. *Id.* at 5–6.

## B.  DISCOVERY DISPUTE

On March 5, 2020, the Court entered its Order Governing Proceedings ("OGP") (Dkt. 20), wherein the Court placed the parties on notice that "[a] party that fails to timely disclose [mandatory documents and information] will not, unless such failure is harmless, be permitted to use such evidence at trial, at a hearing, or in support of a motion." *Id.* at 4. The OGP also ordered

---

[1] In their Second Amended Complaint, Plaintiffs also assert a fourth cause of action—spoliation. *See* Dkt. 15 at 8. However, "unlike many other jurisdictions, Texas does not recognize spoliation as an independent tort cause of action." *See Peals v. QuikTrip Corp.*, No. 4:20-cv-22, 2021 WL 2043185, at *3 (E.D. Tex. May 21, 2021) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F. Supp. 2d 942, 963 n.10 (S.D. Tex. Dec. 8, 2010)).

Defendants to complete initial mandatory disclosures by March 30, 2020. *Id.* at 1. Such disclosures included not only those outlined by Rule 26(a)(1), but also, "[a] copy of all documents, electronically stored information, witness statements, and tangible things in the possession, custody or control of the disclosing party that are relevant to the claim or defense of *any* party." *Id.* at 4 (emphasis added); *see also* LOCAL R. CV-26(d) (defining "relevant to the claim or defense of any party").

After the Court conducted a Rule 16 management conference, it entered a Scheduling Order (Dkt. 32), which stated:

> The parties are reminded of the requirement, set out in the Court's initial [OGP], to have already disclosed, **without awaiting a discovery request**, information in addition to that required by Fed. R. Civ. P. 26, including names of persons likely to have, and documents containing, information "relevant to the claim or defense of any party." If there are any questions about whether information is "relevant to the claim or defense of any party," review Local Rule CV-26(d).

*Id.* at 2 (emphasis added). In the Scheduling Order, the Court ordered the parties to complete limited discovery for conditional certification of the collective action by October 2, 2020. *Id.* at 1.[2]

On July 14, 2020, Eugene DuBose ("DuBose"), counsel for Plaintiffs, notified the Court of a discovery dispute; the Court held a hearing regarding the discovery dispute on July 20, 2020.

---

[2] When the Court entered its Scheduling Order on May 5, 2020, the Eastern District of Texas applied what was known as the *Lusardi* approach to FLSA collective action certification. *See* Dkt. 32; *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011). "Under the *Lusardi* approach, certification for a collective action under [the FLSA] is divided into two stages: (1) the notice stage; and (2) the merits stage." *Tice*, 826 F. Supp. 2d at 994 (citation omitted). At the notice stage, the parties engage in limited, preliminary discovery to determine whether a collective action is viable. *Id.* at 994–95. If the collective action is conditionally certified, the Court will order additional discovery to determine whether the case should formally proceed as a collective action. *Id.* This second phase of discovery and the formal certification, or lack thereof, is known as the merits stage of the *Lusardi* approach. *Id.*

On January 12, 2021, the Fifth Circuit entered its opinion in *Swales v. KLLM Transport Services, LLC*, 985 F.3d 430 (5th Cir. 2021). In *Swales*, the Fifth Circuit rejected the two-stage approach announced in *Lusardi*. *Id.* at 441. In particular, the Fifth Circuit explicitly reprimanded the use of a conditional certification step. *Id.* at 441–42. In light of *Swales*, the Court then entered a First Amended Scheduling Order, which bypassed the conditional certification stage. *See* Dkts. 101, 105, 106, 109, 111.

*See* Dkt. 33; Minute Entry for July 14, 2020 (the "First Hearing"). DuBose and Nizami appeared before the Court. *See* First Hearing. The parties discussed the general nature of the dispute, and the Court ordered the parties to file letter briefs to explain their positions in further detail. *Id.* Plaintiffs' letter brief advises that on May 18, 2020, Plaintiffs served Defendants a Request for Production ("RFP"), and Defendants did not produce any documents until August 3, 2020. *See* Dkt. 38. Further, Plaintiffs represented that the August 3, 2020 production was deficient for the following reasons:

1. The .pdf documents produced by Defendants were not Bates-numbered.

2. Defendants failed to organize and label documents such that Plaintiffs could determine which documents corresponded to which categories identified in the RFP.

3. Defendants produced QuickBooks documents in paper form, rather than electronic form.

4. Defendants did not produce telephone numbers for certain individuals, even though Plaintiffs requested their contact information.

5. In response to Plaintiffs' request for the names and contact information of all individuals whom Defendants paid, Defendants only produced QuickBooks information listing five individuals. However, in another lawsuit wherein DuBose represented an individual suing Defendants, Defendants produced QuickBooks information listing 1,728 individuals whom they paid.

6. In response to Plaintiffs' request for the actual copies of checks paid to Plaintiff Billy Marquis, Defendants only produced spreadsheets, but not the actual checks issued.

7. In response to Plaintiffs' request for records explaining how housing costs comprised part of Plaintiffs' compensation, Defendants only issued a profit/loss statement reporting housing costs generally, rather than checks or detailed pay stubs specifying housing costs as they pertained to each Plaintiff.

8. In response to Plaintiffs' request for bank statements regarding payments made to Plaintiffs and putative collection action members, Defendants produced one bank statement from Comerica Bank for the year 2016 and bank statements from BBVA. Because Plaintiffs never received checks from BBVA, Plaintiffs contended the BBVA bank statements were unresponsive to their request.

Further, Plaintiffs contended the single Comerica Bank statement for 2016 was deficient, as Plaintiffs sought Comerica Bank statements from 2013 to present.

9. In response to Plaintiffs' request for payment records concerning fifteen putative collection action members, Defendants did not produce such documents in their August 3, 2020 production. However, in the aforementioned production, Defendants advised the outstanding documents would be produced at a later date. As of the letter brief's date of August 14, 2020, Defendants had not produced any such documents.

Dkt. 38.

In response, Defendants' letter brief stated they would produce the outstanding documents by September 4, 2020. *See* Dkt. 39. On August 26, 2020, the Court held a hearing, and that same day, the Court entered an Order compelling Defendants to produce responsive documents within their possession, custody, or control by September 4, 2020. *See* Dkt. 41; Minute Entry for August 26, 2020 (the "Second Hearing"). The Order further directed that the documents be Bates-numbered and organized. *See id.*

On September 25, 2020—two weeks after the Court's September 4, 2020 deadline—Plaintiffs filed a Motion to Expedite Discovery (Dkt. 42). Therein, Plaintiffs represented that although Defendants had produced certain documents on September 4, 2020, the production was inadequate. *See id.* One inadequacy related to the contact information produced by Defendants. *Id.* Plaintiffs asked for the contact information of certain individuals, which Plaintiffs believed included telephone numbers and email addresses. *Id.* Nizami allegedly countered that the term "contact information" did not encompass telephone numbers and email addresses, and stated Plaintiffs should have been more specific in their RFP. *Id.* Plaintiffs then served an RFP for such contact information on September 11, 2020, and Plaintiffs' Motion to Expedited Discovery (Dkt. 42) requested that the Court order the RFP be complied with by October 2, 2020—the deadline for discovery relating to conditional certification. *Id.*

The Court ordered an expedited response, which Defendants did not file. Dkt. 43. On October 1, 2020—the day before the Scheduling Order's discovery deadline—the Court held yet another hearing. *See* Dkt. 49 (the "Third Hearing"). During the Third Hearing, Plaintiffs argued that Defendants had still not fully complied with their discovery obligations. *Id.* In particular, Plaintiffs stated they had not received checks issued by banking institutions. *Id.* Further, to the extent Defendants produced responsive documents, such documents were still prejudicially disorganized. *Id.*

In response, Defendants argued the documents sought by Plaintiffs were irrelevant to the claims and defenses in this lawsuit, and, even if they were relevant, Defendants should not be compelled to produce documents from 2013, as any claims arising from conduct in 2013 fell outside the FLSA's statute of limitations. *Id.* Defendants also represented that they had not been able to produce checks, as the banking institutions from which they sought documents were delayed in procuring the records. *Id.*

Ultimately, the Court found the documents sought by Plaintiffs were relevant to the claims and defenses in this suit. *Id.* However, the Court noted that only documents from 2014 and forward were discoverable, as documents from 2013 were responsive to claims whose statutes of limitations had already lapsed. *Id.* The Court further observed that, at this juncture, five months had passed since Plaintiffs first filed their RFP, and Defendants had still not complied with their discovery obligations, despite having two hearings on the matter. *Id.* The Court stated on the record that it was considering imposing sanctions. *Id.* The Court then ordered Defendants to fulfill their outstanding discovery obligations by October 9, 2020. *See* Dkt. 52. In that Order, the Court explicitly warned Defendants "that failure to comply with this Order may result in sanctions." *Id.* at 2.

On October 9, 2020, Defendants filed a notice, wherein they represented they had requested checks from the relevant banking institutions, and such checks were arriving in batches. *See* Dkt. 53. On October 14, 2020, Plaintiffs filed a notice, wherein they described the discovery produced as "profoundly inadequate." Dkt. 56 at 1. Plaintiffs explained that, based on their review of other documents, there should be at least 534 checks issued from Defendants to Plaintiff Billy Marquis. *Id.* However, of the checks produced, "only a handful" were made to Plaintiff Billy Marquis. *Id.* The next day, Defendants, through Nizami, filed a notice responding to the complaints raised by Plaintiffs. *See* Dkt. 57. Therein, Nizami explained that he had received nearly one thousand checks in piecemeal form, and because some of those checks were issued long ago, the banking institution did not have digital copies of such documents. *See id.* at 2. To the extent that copies of checks could not be produced, Nizami noted that he would make a list of such documents. *See id.* In the same Notice, Nizami stated his intent to withdraw from representing Defendants in this matter. *See id.*

On November 3, 2020, Plaintiffs filed another notice, wherein Plaintiffs described the discovery dispute as "virtually unchanged." Dkt. 58. At 1. Plaintiffs explained that although they received 139 pages of checks, most of the checks were issued to a Jacky Nash, who was unlikely to be a putative class action member. *See id.* The latest production of documents contained no checks issued to Plaintiff Billy Marquis, the central party in this lawsuit. *See id.* Based on Plaintiffs' review of other documents, there should have been at least 624 bills or checks issued to Plaintiff Billy Marquis. *See id.*[3]

---

[3] On October 14, 2020, Plaintiffs stated that Defendants should have produced at least 534 checks issued to Plaintiff Billy Marquis. *See* Dkt. 56 at 1. However, on November 3, 2020, Plaintiffs stated there should be at least 624 checks issued to Plaintiff Billy Marquis. *See* Dkt. 58 at 1.

On November 19, November 24, and December 8, 2020, the Court held, respectively, a status conference regarding Defendants' progress with producing responsive documents, a hearing on Nizami's motion to withdraw, and a show cause hearing. *See* Minute Entry for November 19, 2020 (the "Fourth Hearing"); Minute Entry for November 24, 2020 (the "Fifth Hearing"); Minute Entry for December 8, 2020 (the "Sixth Hearing").

Between the Fifth and Sixth Hearings, Plaintiffs filed the Motions for Sanctions (Dkts. 71, 77), wherein they ask the Court to impose five punitive measures: (1) deem certain facts as established for the purposes of this action; (2) prohibit Defendants from supporting or opposing designated claims and defendants; (3) prohibit Defendants from introducing designated matters into evidence; (4) bar Defendants from filing any response to Plaintiffs' Motion for Conditional Certification (Dkt. 27) of their FLSA collective action; and (5) award DuBose attorney fees for litigating this discovery dispute. Plaintiffs submitted invoices authored by DuBose, wherein he documented the extra time he spent litigating the discovery dispute summarized herein. *See* Dkt. 71-1 at 24; Dkt. 77-1 at 1–2; Dkt. 127-1 (the "Invoices").[4] Nizami, on behalf of Defendants, filed a response opposing the Motions for Sanctions. *See* Dkt. 80.

During the Sixth Hearing, the Court expressed its dismay at how this discovery dispute had unfolded, as seven months had passed since Plaintiffs served the first RFP and hundreds of documents were still outstanding. *See* Sixth Hearing. The Court required Nizami and Defendants to show cause as to why sanctions should not be issued. *See id.* In response, Nizami explained he was not personally handling the production of the checks, as another attorney from another firm

---

[4] Docket Number 71-1 contains an initial Invoice, which only lists time spent litigating this discovery dispute. *See* Dkt. 71-1 at 24. In total, this initial Invoice represents DuBose expended 59.1 hours in litigating this discovery dispute over seven months. *See id.* In Docket Numbers 77 and 77-1, DuBose explains that in preparing this initial Invoice, he inadvertently omitted 16.5 hours spent litigating this discovery dispute. *See* Dkts. 77, 77-1. Although this second Invoice details all billable time DuBose has expended in this matter, DuBose provided handwritten annotations identifying which line items reflected extra time litigating the discovery dispute. *See id.* In total, the Invoices reflect DuBose has spent 75.6 hours on this discovery dispute. *See* Dkts. 71-1, 77-1.

representing Defendants, who had not made an appearance in this matter, was in charge of handling the production of banking records. *See id.* As such, Nizami had not subpoenaed the banking institutions. *See id.*

The Court expressed its dissatisfaction with this explanation. *See id.* The Court stressed that it was Nizami's responsibility to ensure that Defendants fulfilled their discovery obligations in this matter—not an attorney unknown to the Court who had yet to make an appearance in this case. *See id.* The Court further warned that, at this juncture, sanctions in some form were appropriate. *See id.* However, the Court found the relief affecting the merits of this case was extreme, as the litigation was still in its early stages. *Id.* The Court noted that, towards the end of the litigation, if Defendants failed to produce evidence to support a claim or defense as required, certain facts favorable to Plaintiffs could properly be presumed true under the Federal Rules of Civil Procedure and the Local Rules. *Id.* The Court concluded the Sixth Hearing by ordering Defendants to produce certain documents and noting it would consider awarding Plaintiffs attorney's fees. *See id.* On December 9, 2020, the Court issued a Memorandum Opinion and Order, which ordered Defendants to (1) serve subpoenas on the relevant banking institutions by December 11, 2020, (2) state in the subpoenas that the banking institutions were to produce documents no later than thirty days after being served with the subpoenas, and (3) organize the banking documents and produce them to Plaintiffs no later than seven days after receiving the documents from the banking institutions. *See* Dkt. 76 at 7.

Because the attorney-client relationship between Nizami and Defendants had deteriorated, the Court permitted Nizami to withdraw his representation. *See* Dkts. 76, 84. On December 18, 2020, the Court held another hearing, during which the Court granted Defendants leave to file a *pro se* response to the Motions for Sanctions, which Defendants timely submitted. *See* Minute

Entry for December 18, 2020 (the "Seventh Hearing"); Dkt. 82. Thereafter, Plaintiffs filed a reply. *See* Dkt. 86. On December 31, 2020, new counsel made an appearance on behalf of Defendants. *See* Dkt. 88. Since new counsel made an appearance, the parties have not contacted the Court regarding a discovery dispute.

### C.  DUBOSE'S HOURLY RATE

DuBose's Invoices report that he has expended 75.6 hours litigating this discovery dispute. *See* Dkts. 71-1, 77-1. Citing an hourly rate of $400 per hour, the Motions for Sanctions seek a total of $30,240 in attorney's fees. *See id.* Both Nizami and Defendants' responses object to DuBose's hourly rate. *See* Dkts. 80, 82. Attached to Nizami's response is a copy of DuBose's advertisements, which state:

> For the past 33 years [DuBose] has been practicing on his own in the Dallas/Fort Worth area, handling matters large and small, the majority involving small and medium sized businesses. In working with his clients he has seen many businessmen making mistakes that have cost them *tens or even hundreds of thousands of dollars* – mistakes that could have been avoided if the businessmen had spent fifty dollars for Mr. DuBose to review the documents before signing.

> The fear has obviously been that a lawyer would cost a fortune. Mr. DuBose has decided to change all that. He has pared his costs to the bone so that he can offer his services at astoundingly low rates. He wants to help people avoid costly mistakes, and he wants to make avoiding them as cheap as possible.

Dkt. 80 at 10 (italics original); *see also* Dkt. 82-6 at 1 (Defendants' response, appended by a nearly identical advertisement).

The advertisement reports that DuBose's hourly services are "Never More Than $100/Hour." *Id.*

Nizami and Defendants argue that, if Plaintiffs are to be awarded attorney's fees, the applicable hourly rate should be $100 per hour, not $400 per hour. *See* Dkts. 80, 82. After Defendants filed their *pro se* response, new counsel made an appearance on their behalf. *See* Dkts.

88, 96. The Court then ordered Plaintiffs and Defendants, through new counsel, to file supplemental briefing on the following issue: If a "low bono" attorney is entitled to sanctions in the form of reasonable attorney's fees, is the movant-attorney entitled to compensation at the prevailing market rate, or the discounted rate offered to clients? *See* Dkt. 117 at 1. The parties timely filed their supplemental briefs, and on July 22, 2021, the Court heard oral argument from the parties. *See* Dkts. 119, 123, 124; Minute Entry for July 22, 2021 (the "Eighth Hearing"). During the Eighth Hearing and the briefing prepared thereto, DuBose confirmed that he charges Plaintiffs a discounted hourly rate of $100 per hour. *See* Dkts. 123, 125.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 37(b)(2)(A) provides: "If a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." FED. R. CIV. P. 37(b)(2)(A). These "further just orders" may include, but are not limited to, striking pleadings in whole or in part, dismissing the action in whole or in part, rendering default judgment against the disobedient party, and ordering the disobedient party to pay attorney's fees. *See* FED. R. CIV. P. 37(b)(2)(A), (C). A district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct." *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990).

"This discretion is subject to certain limitations, however. A party's violation of a discovery order ordinarily must be committed willfully or in bad faith for the court to award the severest of remedies under Rule 37(b), such as striking pleadings, entering a default judgment, or dismissing the action with prejudice." *Trenado v. Cooper Tire & Rubber Co.*, 274 F.R.D. 598, 600 (S.D. Tex. 2011) (citation omitted). For less severe sanctions, the Fifth Circuit does not require a finding of willful or "contumacious" misconduct. *Chilcutt v. United States*, 4 F.3d 1313, 1322,

1323 n.23 (5th Cir. 1993). "Awarding attorney's fees and expenses is viewed by the Fifth Circuit as one of the least severe remedies afforded by Rule 37(b)." *Trenado*, 274 F.R.D. at 600 (citing *Chilcutt*, 4 F.3d at 1320 n.17). Further, the sanction imposed should be the least severe sanction adequate to achieve the proper functions of Rule 37(b)(2) under the particular circumstances. *See Smith & Fuller, PA v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012).

### III.  <u>ANALYSIS</u>

### A.  WHETHER SANCTIONS SHOULD BE ISSUED

As explained at length in this Court's December 6, 2020 Memorandum Opinion and Order, Defendants should be sanctioned for embroiling the parties and the Court in this protracted discovery dispute. *See* Dkt. 76; *supra* Section I.B.

The Court, through its OGP and Scheduling Order, placed Defendants on advance notice of their discovery obligations. *See* Dkts. 20, 32. On May 18, 2020, Plaintiffs served their first RFP on Defendants. *See* Dkt. 47 at 1. Over seven months, the Court held seven hearings to monitor Defendants' progress towards producing responsive documents and to remind them of their discovery obligations. Defendants repeatedly delayed and offered unsatisfactory excuses and arguments for their delay. *See, e.g.*, *id.* at 4 ("[Seventy-four names] were identified; all the contact information provided [was] three cell phone numbers. . . . In a telephone conference, [Nizami] took the position that the term 'contact information' was imprecise and ambiguous."); Dkt. 49 (arguing payments made to Plaintiffs and putative class members were irrelevant to Plaintiffs' FLSA claims, when they clearly were relevant); Dkt. 73 (explaining another attorney who has never made an appearance in the case was responsible for producing checks, not Nizami). As a result, the Court entered four written Orders instructing Defendants to meet their discovery

obligations, and Defendants did not comply. *See* Dkts. 41, 52, 59, 76, 84. Under Rule 37(b)(2)(A), sanctions are warranted. *See* Fed. R. Civ. P. 37(b)(2)(A).

### B.  WHICH SANCTIONS SHOULD BE ISSUED

In their Motions for Sanctions, Plaintiffs ask the Court to: (1) deem certain facts as established in this matter; (2) prohibit Defendants from supporting or opposing certain claims and defenses; (3) prohibit Defendants from introducing certain matters into evidence; (4) bar Defendants from filing a response to Plaintiffs' motion for conditional certification; and (5) award Plaintiffs reasonable attorney's fees arising from this discovery dispute. *See* Dkts. 71, 77.

The first three sanctions sought by Plaintiffs are too severe. The Court must issue sanctions conservatively. In so doing, the Court must take care to impose the least severe sanction that is adequate to deter the behavior under the particular circumstances. *See Smith & Fuller, PA*, 685 F.3d at 488. Here, the Court finds these three sanctions sought—striking Defendants' pleadings, prohibiting Defendants from mounting a defense, and prohibiting Defendants from introducing certain issues into evidence—prematurely affect the underlying merits of the case. As the Court previously noted, the Motions for Sanctions were filed when this case was in its procedural infancy, and the Court had yet to decide the preliminary question of whether this lawsuit should proceed as a collective action. *See* Dkt. 73 (noting the Local Rules state that, if documents relevant to an issue are not produced, the Court may permit certain facts to be true without having to resort to sanctions); Dkt. 76 at 6 (stating sanctions affecting the merits of this litigation are premature and excessive). The Court concludes awarding attorney's fees sufficiently furthers Rule 37(b)'s deterrence goals. *See infra* Section III.C. However, should Defendants continue to flout their discovery obligations, the Court may impose more severe sanctions in the future. Plaintiffs' request for these three sanctions is therefore **DENIED WITHOUT PREJUDICE**.

As to the fourth sanction sought by Plaintiffs—prohibiting Defendants from filing a response to Plaintiffs' Amended Motion for Conditional Certification of Collective Action (the "Amended Motion for Conditional Certification") (Dkt. 27)—this issue is now moot. While the Amended Motion for Conditional Certification was pending, the Fifth Circuit decided *Swales*, which held that district courts may no longer conditionally certify an FLSA collective action. *See* 985 F.3d at 441; *see also supra* Section I.B. n.1. Accordingly, the Court denied the Amended Motion for Conditional Certification and ordered the parties to propose an amended scheduling order suggesting litigation phases consistent with *Swales*, which the parties timely submitted. *See* Dkts. 107, 109, 111, 113. Because the Amended Motion for Conditional Certification is no longer before the Court, Plaintiffs' request for this fourth sanction—prohibiting Defendants from filing a response—is **DENIED AS MOOT**.

Lastly, with respect to attorney's fees, the Court finds awarding some amount of attorney's fees is appropriate. Defendants failed to fulfill their discovery obligations for seven months, which forced the Court to hold eight hearings, wade through numerous filings, and issue four Orders compelling the production of documents. *See supra* Section I.B. Plaintiffs are entitled to a remedy compensating them for their added litigation costs. *See Smith & Fuller, PA*, 685 F.3d at 488. Therefore, Plaintiffs' request for attorney's fees is **GRANTED**.

### C.  AMOUNT OF ATTORNEY'S FEES TO AWARD

"Under Rule 37(b)(2)(E) of the Federal Rules of Civil Procedure, a party may be personally liable for *reasonable* expenses including attorney's fees *caused* by the failure to comply with a discovery order." *Batson v. Neal Spelce Assocs., Inc.*, 765 F.2d 511, 516 (5th Cir. 1985) (italics original) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763 (1980)). In assessing the reasonableness of attorney's fees, the court must first determine the "lodestar" by multiplying the

reasonable number of hours expended and the reasonable hourly rate for each participating attorney. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Green v. Administrators of the Tulane Educ. Fund*, 284 F.3d 642, 661 (5th Cir. 2002). In so doing, the court "must provide a concise but clear explanation of its reasons for the fee award, making subsidiary factual determinations regarding whether the requested hourly rate is reasonable, and whether the tasks reported by counsel were duplicative, unnecessary, or unrelated to the purposes of the lawsuit." *Engender LLC v. Cypress Zone Prods., LLC*, No. 20-1591, 2021 WL 3423589, at *1 (E.D. La. Aug. 5, 2021) (citing *Hensley*, 461 U.S. at 437–39; *Associated Builders & Contractors of La., Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 379 (5th Cir. 1990)). The movant bears the burden of proof on these issues. *See Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996).

Awarding attorney's fees under Rule 37(b) should "serve the dual function of reimbursing the moving party and deterring the violator of the discovery orders (as well as other potential violators)." *Day v. Allstate Ins. Co.*, 788 F.2d 1110, 1114 (5th Cir. 1986) (citing *Roadway Express*, 447 U.S. at 763–64; *Remington Prods., Inc. v. North Am. Philips Corp.*, 107 F.R.D. 642, 644 (D. Conn. 1985)); *see also Mary Kay Inc. v. Reibel*, No. 3:17-cv-2634, 2019 WL 1128959, at *6 (N.D. Tex. Mar. 11, 2019).

### 1. Reasonable Hourly Rates

Reasonable hourly rates are determined by referring to the prevailing market rate in the community in which the district court sits. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011); *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002). The burden is on the fee applicant to produce satisfactory evidence that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill. *Blum v. Stenson*, 465 U.S. 886, 895 (1984).

Within the Eastern District of Texas, Sherman Division, courts have found the following hourly rates reasonable in an FLSA collective action case: $275 per hour for an attorney with nineteen years of experience; $325 per hour for an attorney with twenty years of experience; $400 per hour for an attorney with seven years of experience; and $450 per hour for an attorney with twenty-four years of experience. *See Vassallo v. Goodman Networks, Inc.*, No. 4:15-cv-197, 2016 WL 6037847, at *4–5 (E.D. Tex. Oct. 14, 2016); *Little v. Technical Specialty Prods., LLC*, No. 4:11-cv-717, Dkt. 147 at 9–10 (E.D. Tex. July 31, 2014).

Here, DuBose has submitted his curriculum vitae, which reports that he has approximately fifty years of legal experience. *See* Dkt. 71-1 at 22–23. He has experience practicing commercial litigation at both the trial and appellate levels, and he has served as an Assistant Professor at Northwestern University School of Law. *See id.* It therefore appears his requested hourly rate of $400 per hour is reasonable based on the prevailing market rate.

However, the Court is mindful of the three goals underlying an award of attorney's fees: (1) reimbursing Plaintiffs for the costs actually incurred as a result of Defendants' disobedience; (2) deterring future misconduct; and (3) ensuring the sanction imposed is the least severe in achieving the goal of deterrence. *See Batson*, 765 F.2d at 516; *Smith & Fuller, PA*, 685 F.3d at 488; *Mary Kay*, 2019 WL 1128959, at *6. In light of these considerations, the Court finds that the reasonable hourly rate, in this instance, is $300 per hour. This figure accounts for the following: the $100 rate DuBose actually charged Plaintiffs, the hourly rates this Court has previously approved in FLSA actions, deterring Defendants and others from similar misconduct, and the Court's obligation to impose the least severe sanction available.

In their responses, Defendants argue DuBose is not entitled to a windfall. *See* Dkts. 80, 82, 123. According to Defendants, because DuBose would normally only accrue fees at a rate of $100

per hour for this case, the sanctions imposed should be limited to this amount. This argument has persuasive appeal; however, legal authority in this Circuit cuts against Defendants' position.

For example, in *Saldivar v. Rodela*, 894 F. Supp. 2d 916 (W.D. Tex. 2012), the court awarded attorney's fees to a lawyer employed by a publicly funded legal entity. *Id.* at 927–28. There, an indigent petitioner retained the services of a lawyer employed by a non-profit. *Id.* The petitioner prevailed on the merits, and at issue was whether the lawyer should be awarded attorney's fees, even though he did not charge his non-profit employer or the petitioner an hourly rate for legal services. *Id.* The court in *Saldivar* reasoned that "[d]enying awards to legal aid entities . . . would provide a perverse incentive to [a defendant] in a clear-cut losing case not to settle early but to protract the court proceeding, thereby locking up scarce time and resources the legal aid counsels could devote to assisting other indigent clients." *Id.* at 931–32 (citation omitted); *see also Greater New Orleans Fair Housing Action Ctr. v. St. Bernard Parish*, No. 06-7185, 2010 WL 11538595, at *17–19 (E.D. La. Sept. 1, 2010) (awarding attorneys' fees to non-profit fair housing advocacy organization at prevailing market rate in New Orleans, Louisiana), *report and recommendation adopted*, 2010 WL 11538621 (E.D. La. Nov. 8, 2010). Similarly, in *Dennis v. Chang*, 611 F.2d 1302 (9th Cir. 1980), the Ninth Circuit held:

> [A]ppellants concede that attorneys' fees may be awarded under the Fees Awards Act even though plaintiffs have been represented without charge by a legal services organization. An award in these circumstances serves the purpose of the Act for two reasons: (1) the award encourages the legal services organization to expend its limited resources in litigation aimed at enforcing the civil rights statutes; and (2) the award encourages potential defendants to comply with civil rights statutes. These same considerations support an award of attorneys' fees when the legal services organization is funded by the state and the state is the defendant.

*Id.* at 1306.

The logic of *Saldivar* and *Dennis* should govern here. If non-profits are entitled to fees at the reasonable market rate, even though their counsel do not bill at hourly rates, then so should

"low bono" attorneys. Further, as the Fifth Circuit has instructed, sanctions under Rule 37(b) have a "dual function" of not only reimbursing the attorney, but also deterring the violator and potential violators. *Day*, 788 F.2d at 1114. With these principles in mind, the Court concludes an hourly rate of $300 per hour is a reasonable rate for DuBose's legal services, not his actual "low bono" rate of $100 per hour. This rate adequately accounts for DuBose's experience, falls within the prevailing market rate, furthers Rule 37(b)'s deterrence goals, and is the least severe amount to serve such goals.

### 2. Reasonable Hours Expended

The party seeking attorney's fees bears the burden of documenting and supporting the reasonableness of all time expenditures for which compensation is sought. *Hensley*, 461 U.S. at 437. The attorney for the prevailing party "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, and otherwise unnecessary . . . ." *Id.* at 434. In determining whether the hours expended are reasonable, the Court can draw from its own experience as a lawyer and a judge. *See Branch Banking & Tr. Co. v. Re Rez LP*, No. 4:19-cv-630, 2021 WL 863766, at *11 (E.D. Tex. Jan. 8, 2021), *report and recommendation adopted*, 2021 WL 857937 (E.D. Tex. Mar. 5, 2021); *Sharif v. Wellness Int'l Network*, No. 3:05-cv-1367, 2008 WL 2885186, at *2 (N.D. Tex. July 22, 2008).

Having reviewed the line items reported in DuBose's Invoices and drawing from the Court's own experience with similar discovery disputes, the Court finds the 75.6 hours expended on this discovery dispute excessive. For example, on November 26 and 27, 2020, DuBose purportedly spent six hours drafting a letter to the Court. *See* Dkt. 71-1 at 24. The letter received by the Court was a five-page document with little legal analysis. *See* Dkt. 70. Similarly, on December 3 and 4, 2020, DuBose purportedly spent 6.5 hours drafting the first Motion for

Sanctions (Dkt. 71). *See* Dkt. 71-1 at 24. The first Motion for Sanctions spans five pages and is primarily comprised of block-quoted statutory and regulatory language, with little discussion on the case law outlining the legal framework for imposing sanctions. *See* Dkt. 71. The Court therefore finds a reduction in hours is appropriate. *See Hensley*, 461 U.S. at 434 ("The district court should exclude . . . hours that were not reasonably expended."); *Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 799, 800 (5th Cir. 2006) (holding fee applicant must exercise "billing judgment" and write off excessive hours). The Court has reviewed the Invoices and cross-referenced the dates of these activities with their corresponding court filings. Having done so, the Court concludes the 75.6 hours expended on this discovery dispute should be reduced by twenty percent. *See, e.g.*, *Hopwood v. Texas*, 236 F.3d 256, 279 (5th Cir. 2000) (affirming district court's reduction of attorneys' fees by twenty-five percent, as fee applicant did not exercise adequate billing judgment). Therefore, the Court concludes 60.48 hours constitute a reasonable amount of time spent on this discovery dispute.

In light of the above, a lodestar calculation of $300 per hour for 60.48 hours of work yields a fee award of $18,144.

### 3. Adjustment of the Lodestar

After the lodestar is determined, the Court may then adjust the lodestar upward or downward depending on the twelve factors set forth in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). Those twelve factors are:

1. The time and labor required;
2. The novelty and difficulty of the questions;
3. The skill requisite to perform the legal service properly;
4. The preclusion of other employment by the attorney due to the acceptance of the case;
5. The customary fee;
6. Whether the fee is fixed or contingent;
7. Time limitations imposed by the client or the circumstances;

    8.   The amount involved and the results obtained;
    9.   The experience, reputation, and ability of the attorneys;
  10.  The "undesirability" of the case;
  11.  The nature and length of the professional relationship with the client; and
  12.  Awards in similar cases.

*Id.* at 717–19.

The lodestar is presumptively reasonable and should only be modified in exceptional cases. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). To the extent any *Johnson* factors are subsumed in the lodestar, they should not be reconsidered when determining whether an adjustment to the lodestar is required. *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998). The "degree of success obtained" is the "most critical factor" in determining the reasonableness of a fee award. *Id.*

Here, the Court does not discern any exceptional circumstances to warrant an adjustment. The first factor—time and labor required—is subsumed in the lodestar calculation. *See Little*, No. 4:11-cv-717, Dkt. 147 at 11; *St. Bernard Parish*, 2010 WL 11538595, at *19; *Sheffield v. Stewart Builders, Inc.*, No. H-19-1030, 2021 WL 951897, at *6 (S.D. Tex. Mar. 10, 2021). It therefore weighs neutrally. *See id.*

As to the second and third factors—the novelty and difficulty of the discovery dispute and the skill required to litigate the discovery dispute—the Court does not find the FLSA issues particularly complex or novel, nor does the Court find the discovery dispute particularly complex to litigate. *See Little*, No. 4:11-cv-717, Dkt. 147 at 1, 11 (finding FLSA retaliation case, when fully litigated before a jury, was not a particularly novel or complex case); *Sheffield*, 2021 WL 951897, at *6 (same, but in FLSA overtime collection case); *see also St. Bernard Parish*, 2010 WL 11538595, at *19 ("To the extent the issues raised in the case were complex, this has been taken into consideration in the determination of the lodestar."). This factor weighs neutrally. *See id.*

The fourth factor—the preclusion of other employment by the attorney due to accepting this case—weighs in favor of an upward adjustment. *See Little*, No. 4:11-cv-717, Dkt. 147 at 11. In his affidavit, DuBose testifies that this protracted lawsuit has required him to expend so much time and effort litigating that he has had to turn away other clients in order to effectively advocate for Plaintiffs. *See* Dkt. 119-1 at 3–4. Given that this lawsuit's trajectory thus far, the Court finds DuBose's affidavit testimony credible. This factor weighs in favor of an upward adjustment.

The fifth factor—the customary fee—is subsumed in the lodestar calculation. *See Little*, No. 4:11-cv-717, Dkt. 147 at 11; *Sheffield*, 2021 WL 951897, at *7; *St. Bernard Parish*, 2010 WL 11538595, at *19. Therefore, it weighs neutrally. *See id.*

The sixth factor—whether the fee is fixed or contingent—weighs in favor of an upward adjustment. Because taking a case on a contingent basis risks nonpayment, this Court has previously found this factor weighs in favor of an upward adjustment where an attorney is hired on a contingent basis. *See Little*, No. 4:11-cv-717, Dkt. 147 at 11–12. Here, DuBose represents he has such an arrangement with Plaintiffs. *See* Dkt. 119 at 1–2. Therefore, this factor weighs in favor of an upward adjustment.

The seventh factor—time limitations imposed by the client or the circumstances—weighs neutrally, as there are no time limitations involved. *See Little*, No. 4:11-cv-717, Dkt. 147 at 11; *Sheffield*, 2021 WL 951897, at *7; *St. Bernard Parish*, 2010 WL 11538595, at *19.

The eighth factor—the amount involved and the results obtained—is the most critical factor, and it weighs neutrally. *See Little*, No. 4:11-cv-717, Dkt. 147 at 11–12. Here, the amount involved is only the attorney's fees expended in litigating this discovery dispute, subject to any upward or downward adjustment. Further, Plaintiffs obtained a rather modest result: the production

21

of documents to which they were entitled. The Court discerns no exceptional circumstance in this eighth factor to warrant an adjustment. Therefore, the eighth factor weighs neutrally.

The ninth factor—the experience, reputation, and ability of the attorneys—is subsumed in the lodestar. It therefore weighs neutrally. *See id.* at 12; *Sheffield*, 2021 WL 951897, at *7; *St. Bernard Parish*, 2010 WL 11538595, at *20.

The tenth factor—the undesirability of the case—weighs in favor of an upward adjustment. *See id.* In his affidavit, DuBose testifies that in cases for which he charges $100 an hour, the clients possess no assets or insurance, are impoverished, and are vulnerable. *See* Dkt. 119-1 at 3. DuBose further testifies Plaintiffs' case—which, allegedly, involved slave-like conditions—is one such case. *See id.* Because attorneys would likely view Plaintiffs' case as undesirable, this factor weighs in favor of an upward adjustment. *See id.* at 12; *Sheffield*, 2021 WL 951897, at *7.

The eleventh factor—the nature and length of the professional working relationship between DuBose and Plaintiffs—is unknown, and therefore weighs neutrally. *See Little*, No. 4:11-cv-717, Dkt. 147 at 12 (finding professional relationship of two years weighed neutrally); *Sheffield*, 2021 WL 951897, at *7 (finding attorney and client with no relationship prior to the lawsuit led this factor to weigh neutrally).

The twelfth factor—awards in similar discovery disputes—is subsumed in the lodestar calculation and weighs neutrally. *See Sheffield*, 2021 WL 951897, at *7.

Overall, four *Johnson* factors weigh in favor of an upward adjustment and eight *Johnson* factors weigh neutrally. On balance, the Court discerns no exceptional circumstances to warrant an upward or downward adjustment of the lodestar rate. *See Little*, No. 4:11-cv-717, Dkt. 147 at 12 (finding no adjustment from lodestar was warranted after finding ten *Johnson* factors weighed neutrally and two *Johnson* factors weighed in favor of an upward adjustment).

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs' Motions for Sanctions (Dkts. 71, 77) are **GRANTED**

**IN PART** and **DENIED IN PART** as follows:

1. Plaintiffs' request that certain facts be deemed established in this action, that Defendants are prohibited from supporting or opposing certain claims and defenses, and that Defendants are prohibited from introducing certain matters into evidence is **DENIED WITHOUT PREJUDICE**.

2. Plaintiffs' request that Defendants be barred from filing any response to Plaintiffs' Motion for Conditional Certification (Dkt. 27) is **DENIED AS MOOT**.

3. Plaintiffs' request for attorney's fees is **GRANTED**. However, Plaintiffs' request for $30,240 for DuBose's 75.6 hours of legal work, calculated using an hourly rate of $400 per hour, is **DENIED**. Plaintiffs are entitled to $18,144 for DuBose's 60.48 hours of work, calculated using an hourly rate of $300 per hour.

**IT IS THEREFORE ORDERED** that Defendants are hereby sanctioned for disobeying the Court's discovery orders, and Defendants shall pay DuBose attorney's fees in the amount of $18,144 for their misconduct. Defendants shall pay DuBose $18,144 no later than thirty (30) days from the date of this Memorandum Opinion and Order.

**IT IS FURTHER ORDERED** that Defendant shall notify the Court no later than five (5) days after submitting their payment of $18,144 to DuBose.

**So ORDERED and SIGNED this 13th day of September, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE