IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **BILLY MARQUIS,** *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil No. 4:19-cv-626-RWS-KPJ |
| | § | |
| **KHOSROW SADEGHIAN and AMY JO SADEGHIAN,** | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs Billy Marquis, Alexis Marquis, and Anthony Marquis' (collectively, "Plaintiffs") Motion to Disqualify Counsel (the "Motion to Disqualify") (Dkt. 110), to which Defendants Khosrow Sadeghian and Amy Sadeghian (collectively, "Defendants") filed a response (Dkt. 112). Having considered the arguments and applicable authorities, the Court finds Plaintiffs' Motion (Dkt. 110) is hereby **DENIED**.

### I. BACKGROUND

Plaintiffs allege Defendants own over one thousand properties in Texas and other states, which they purchase, sell, and lease to generate income. Dkt. 15 at 1–2. Plaintiffs allege that, in September 2014, Defendants recruited them from Houston, Texas, to the North Texas region to work for Defendants and live in one of their properties. *Id.* at 2–3. After Plaintiffs arrived, Defendants allegedly exerted control over Plaintiffs, kept them "poverty-stricken" such that they could not leave, and overall, treated Plaintiffs "as though they were slaves." *Id.* at 1–2, 4.

On August 27, 2019, Plaintiffs filed an Original Complaint (Dkt. 1), which was superseded by a First Amended Complaint (Dkt. 12) and a Second Amended Complaint (Dkt. 15). The Second Amended Complaint asserts three causes of actions against Defendants: (1) willful violations of

1

the Fair Labor Standards Act ("FLSA"), 29 U.S.C § 203 *et seq.*; (2) violations of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.46; and (3) negligent injuring of Plaintiff Billy Marquis. *See* Dkt. 15 at 5–8.[1] Plaintiffs' FLSA claim seeks certification of a collective action, which, if granted, would be comprised of current and former employees of Defendants. *Id.* at 6. Plaintiffs represent Billy Marquis has initiated a separate state court lawsuit, wherein he asserts state law claims, which are presumably different from the DTPA and negligence claims pending before the Court. *See* Dkt. 110 at 6.[2]

After Plaintiffs filed their Original Complaint, Defendants briefly appeared as *pro se* litigants. *See* Dkt. 7 (motion for extension of time to file answer, filed *pro se*). Defendants were later represented by Shibaz Nizami ("Nizami"). *See* Dkt. 9 (answer to Original Complaint, filed by Nizami). After tensions arose between Defendants and Nizami, the Court permitted Nizami to withdraw from this matter on December 18, 2020. *See* Dkts. 76, 84. Defendants were once again *pro se* parties for approximately two weeks, during which they filed various documents. *See* Dkts. 82, 83, 84, 88. On December 31, 2020 and January 8, 2021, Steven Clark ("Clark") and Matthew Joseph Altick ("Altick") respectively made their appearance as new counsel of record for Defendants. *See* Dkts. 88, 96.

On January 7, 2021—more than a year after the Second Amended Complaint was filed—a Motion to Dismiss (Dkt. 94) was filed on behalf of Defendants. *See* Dkts. 15, 94. The Motion to Dismiss raised four arguments.

---

[1] In their Second Amended Complaint, Plaintiffs also assert a fourth cause of action—spoliation. *See* Dkt. 15 at 8. However, "unlike many other jurisdictions, Texas does not recognize spoliation as an independent tort cause of action." *See Peals v. QuikTrip Corp.*, No. 4:20-cv-22, 2021 WL 2043185, at *3 (E.D. Tex. May 21, 2021) (quoting *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 762 F. Supp. 2d 942, 963 n.10 (S.D. Tex. Dec. 8, 2010)).

[2] It is unclear whether Billy Marquis' co-Plaintiffs in this matter, Alexis Marquis and Anthony Marquis, are also co-plaintiffs in the parallel state lawsuit.

First, the Motion to Dismiss argued Plaintiffs failed to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Dkt. 94 at 1. The Motion to Dismiss contended Plaintiffs were not employees under the FLSA, and accordingly, the FLSA does not apply to Plaintiffs. *Id.*

Second, the Motion to Dismiss argued this lawsuit is duplicative of parallel state court litigation. *Id.* at 1–2. To avoid wasteful litigation, the Motion to Dismiss contended this federal proceeding should be dismissed. *See id.*

Third, the Motion to Dismiss accused Plaintiffs' counsel, Eugene DuBose ("DuBose"), of using Defendants' personal information to identify potential plaintiffs, initiating state court lawsuits on behalf of these recruited plaintiffs, and "torment[ing]" Defendants with such lawsuits. *Id.* at 1–2. Attached to the Motion to Dismiss is an excerpted transcript of Terry Weimer's ("Weimer") deposition. *See* Dkt. 94-2. Weimer, who is represented by DuBose, has sued Defendants in another lawsuit. *See* Dkt. 110 at 3. In Weimer's deposition testimony in that proceeding, Weimer testified that DuBose knocked on his door, entered his house to discuss certain matters, and was hired by Weimer that same day. *See* Dkt. 94-2 at 7–8; Dkt. 110 at 3. The Motion to Dismiss argued the lawsuit concerning Weimer, this federal lawsuit, and other proceedings were initiated to harass Defendants, and dismissal should be granted on this basis. *Id.* at 1–2.

Fourth, the Motion to Dismiss alleged DuBose's recruitment efforts violated the ethical rules for attorneys who seek to solicit business. *Id.* The Motion to Dismiss argued that this alleged ethical violation warrants dismissal. *See id.*

Clark, using his electronic credentials, initially filed the Motion to Dismiss on behalf of Defendants without a signature block. *See* Dkt. 93. After the Clerk of Court marked the Motion to Dismiss as deficient, Clark filed a non-deficient Motion to Dismiss on behalf of Defendants. *See* Dkt. 94; FED. R. CIV. P. 11(a) ("Every pleading, written motion, and other paper must be signed

3

by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented."). The non-deficient Motion to Dismiss' signature block names both Clark and Altick and bears Clark's signature. *Id.* at 3. Further, the Motion to Dismiss' typeface is consistent with other filings from Clark and Altick—not Defendants' *pro se* filings. *Compare* Dkt. 94 *with* Dkts. 83, 129.

On January 28, 2021, the Court held a hearing to discuss a motion unrelated to this Memorandum Opinion and Order (the "Hearing"). *See* Dkt. 105. At the end of the Hearing, the Court noted the Motion to Dismiss was pending, and asked Clark and Altick how the Court could entertain a Rule 12(b)(6) motion at this point in the litigation, as Defendants had filed an answer and more than twenty-one days had passed since the Second Amended Complaint was filed. *See id.*; FED. R. CIV. P. 12(a)(1), (b)(6), (h). On the record, Clark represented that the Motion to Dismiss was a *pro se* filing from Defendants, despite the signature block indicating otherwise. *See* Dkt. 105.[3]

On February 8, 2021, Plaintiffs filed the pending Motion to Disqualify (Dkt. 110), wherein they seek to disqualify Clark from this lawsuit.[4] Plaintiffs argue the Motion to Dismiss constituted three violations of Federal Rule of Civil Procedure 11(b): (1) Rule 11(b)(2)'s requirement that an attorney filing a document certifies the arguments contained therein are nonfrivolous; (2) Rule 11(b)(3)'s requirement that an attorney asserting factual contentions must certify the contentions have evidentiary support, or will likely have evidentiary support, after a reasonable opportunity for further investigation or discovery; and (3) Rule 11(b)(1)'s requirement that the Motion to Dismiss was not filed with the intent to harass DuBose. *See id.* With respect to the purported

---

[3] At the time Clark made this representation, the Court did not realize the Motion to Dismiss bore Clark's signature and, thus, accepted Clark's representation as true. *See* Dkt. 105.

[4] The Motion to Disqualify does not seek to disqualify Altick from representing the Sadeghians.

violation of Rule 11(b)(1), DuBose asserts that in Billy Marquis' parallel state court proceeding, Defendants, through Clark, filed a motion for sanctions against DuBose three days after filing the Motion to Dismiss. *Id.* at 7–8. DuBose claims these motions constitute "a coordinated attack." *Id.* at 8. To the extent Clark argues the Motion to Dismiss was drafted by Defendants, and Clark simply signed and filed it at Defendants' insistence, Plaintiffs argue this act breached Clark's duty to "bring his clients to heel." *Id.* at 8. The Motion to Disqualify also cites to the Texas Disciplinary Rules of Professional Conduct 3.01 and 3.03(a)(1), as well as Local Rule AT-3. *Id.* at 2–3, 5.

Defendants, through Clark, filed a response to the Motion (Dkt. 112). The response insists that the Motion to Dismiss was a *pro se* filing, even though the Motion to Dismiss was filed using Clark's electronic credentials, reflected Clark's typeface for court papers, and bore his signature. *Id.* at 1 n.2. The response appears to contend that Clark appended his signature to the Motion because he construed the Clerk of Court's deficiency notice as an instruction from the Court to which Clark was required to comply: "After [the Sadeghians'] filed their *pro se* motion to dismiss, the Clerk rejected the filing and, in the rejection, specifically noted in the docket text '. . . . The Motion is missing the attorney's signature block and the exhibits must be filed as separate documents. Correction should be made by one business day.'" *Id.* (italics added). Further, the response argues Defendants' motion for sanctions filed in state court is meritorious and not intended to harass DuBose. *Id.* at 3. According to Defendants, Billy Marquis' two lawsuits show DuBose has intentionally initiated these proceedings to harass Defendants. *Id.* at 3.

## II.   LEGAL STANDARD

"A motion to disqualify counsel is the proper method by which an issue of unethical conduct or a conflict of interest should be brought to the attention of the court." *Taylor v. Academic P'ships, LLC*, No. 3:19-cv-1764, 2019 WL 6619808, at *8 (N.D. Tex. Nov. 5, 2019), *report and recommendation adopted*, 2019 WL 6619385 (N.D. Tex. Dec. 4, 2019). Because motions to disqualify are substantive in nature, they are decided under federal law. *FDIC v. U.S. Fire Ins. Co.*, 50 F.3d 1304, 1312 (5th Cir. 1995). In the Fifth Circuit, "[w]hen considering motions to disqualify, courts should first look to the local rules promulgated by the local court itself." *In re ProEducation Int'l, Inc.*, 587 F.3d 296, 299 (5th Cir. 2009). Thereafter, courts are to "consider the ethical rules announced by the national profession in light of the public interest and the litigants' rights." *In re Am. Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992).

"All in all, disqualification is a severe sanction." *Asgaard Funding LLC v. ReynoldsStrong, LLC*, 426 F. Supp. 3d 292, 296 (N.D. Tex. 2019). Because "[d]epriving a party of the right to be represented by the attorney of his or her choice is a penalty that must not be imposed without careful consideration," courts must consider all facts "with meticulous deference to the litigant's rights." *U.S. Fire Ins. Co.*, 50 F.3d at 1313; *In re ProEducation*, 587 F.3d at 300. "The party seeking to disqualify an attorney bears the burden of proving that disqualification is warranted, and that burden is heavy." *Spears v. McCraw*, No. A-17-CA-1105, 2020 WL 589538, at *2 (W.D. Tex. Feb. 5, 2020) (citing *Duncan v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 646 F.2d 1020, 1028 (5th Cir. 1981)). This is especially true where a party files a motion to disqualify opposing counsel, as opposed to a client's motion to disqualify his own counsel: Motions to disqualify from an opponent have the potential to be used as procedural weapons advancing purely tactical purposes, such as delay or harassment. *Taylor*, 2019 WL 6619808, at *9; *see also Galderma Labs.,*

*LP v. Actavis Mid Atl. LLC*, 927 F. Supp. 2d 390, 395 (N.D. Tex. 2013) ("When the Model Rules are invoked as procedural weapons, the party subverts the purpose of the ethical rules."). Ultimately, the inquiry boils down to balancing the public interest and the litigant's rights: "[W]here public confidence in the legal system may be jeopardized by an attorney," such an erosion in the public's faith would warrant disqualification. *U.S. Fire Ins. Co.*, 50 F.3d at 1312, 1315; *see also In re Dresser Indus.*, 972 F.2d 540, 543–44 (5th Cir. 1992) (holding a court must consider whether "the likelihood of public suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case").

### III. ANALYSIS

#### A. RULE 11

As a preliminary matter, the Court must address the unusual posture of Plaintiffs' Motion to Disqualify. Although the filing is styled as a Motion to Disqualify, the filing primarily argues Clark committed three violations of Rule 11(b). *See* Dkt. 110. Explained below, Plaintiffs' Rule 11(b) arguments are not properly before the Court.

Pursuant to Rule 11(b), an attorney who signs and files a document with the Court certifies the following:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b)(1)–(4).

Rule 11(c)(1) provides, "If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party . . . ." FED. R. CIV. P. 11(c)(1). Where a party desires sanctions be imposed, Rule 11(c)(2) requires the party to first serve the motion for sanctions on the opposing party and afford the opposing party twenty-one days to take remedial measures or reach an agreeable solution with the movant. *See* FED. R. CIV. P. 11(c)(2); *Askins v. Hagopian*, 713 F. App'x 380, 381 (5th Cir. 2018) (citing *In re Pratt*, 524 F.3d 580, 588 (5th Cir. 2008)). Only after serving the motion for sanctions and waiting twenty-one days can the movant file the motion for sanctions with the Court. *See id.* If the Court wishes to impose sanctions on its own initiative, Rule 11(c)(3) requires the Court first enter an order to show cause prior to imposing sanctions. *See* FED. R. CIV. P. 11(c)(3).

Here, there is no indication that Plaintiffs served the Motion to Disqualify on Defendants and waited twenty-one days before filing it with the Court. Therefore, to the extent Plaintiffs intended to file a Rule 11(c)(2) motion for sanctions, such a motion is not properly before the Court; hence, the Court will not consider Plaintiffs' Rule 11(b) arguments and evaluate, under the appropriate legal framework, whether a Rule 11(b) violation occurred. *See Castro & Co., LLC v. Diamond Offshore Servs. Ltd.*, No. 3:18-cv-574, 2018 WL 6069973, at *10–13 (N.D. Tex. Oct. 29, 2018) (describing legal framework for assessing whether a Rule 11(b)(1), (b)(2), or (b)(3) violation occurred).

Further, although the Court may *sua sponte* issue an order to show cause as to why certain conduct has not violated Rule 11(b), the Court declines to do so at this time. *See* FED. R. CIV. P. 11(c)(3). Therefore, the Court limits its analysis to the legal framework for motions to disqualify,

which requires examining the applicable ethical rules, rather than looking to Rule 11(b) case law to determine whether disqualification is warranted. *See In re ProEducation*, 587 F.3d at 299; *In re Am. Airlines*, 972 F.2d at 610.

### B. APPLICABLE ETHICAL RULES

As the Fifth Circuit has instructed, the Court must look first to this District's Local Rules and then consider "the ethical rules announced by the national profession," which, here, are the American Bar Association's ("ABA") Model Rules of Professional Conduct. *See In re ProEducation*, 587 F.3d at 299; *In re Am. Airlines*, 972 F.3d at 510; *Olmstead v. Hoppe*, No. 5:19-cv-203, 2020 WL 2487050, at *6 (N.D. Tex. Mar. 9, 2020), *report and recommendation adopted*, 2020 WL 1482324 (N.D. Tex. Mar. 27, 2020).

Local Rule AT-2 provides "the Rules Governing the State Bar of Texas shall serve as a guide governing the obligations and responsibilities of all attorneys appearing in this court." LOCAL R. AT-2. Local Rule AT-2 recognizes "that no set of rules may be framed which will particularize all the duties of the attorney," and, accordingly, the Rule notes that court decisions, statutes, and the usages and customs of the Eastern District of Texas's bar association may also be considered when evaluating alleged attorney misconduct. *Id.*

Here, Plaintiffs allege Clark violated Texas Disciplinary Rules 3.01 and 3.03(a)(1). *See* Dkt. 110 at 2–3. Texas Disciplinary Rule 3.01 provides: "A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless the lawyer reasonably believes that there is a basis for doing so that is not frivolous." TEX. DISCIPLINARY R. OF PRO. CONDUCT 3.01. Texas Disciplinary Rule 3.03(a)(1) provides: "A lawyer shall not knowingly make a false statement of material fact or law to a tribunal." TEX. DISCIPLINARY R. OF PRO. CONDUCT 3.01 (cleaned up).

ABA Model Rules 3.1 and 3.3(a)(1) are almost identical to Texas Disciplinary Rules 3.01 and 3.03(a)(1). *See* ABA MODEL R. OF PRO. CONDUCT 3.1, 3.3(a)(1).

### C. WHETHER DISQUALIFICATION IS WARRANTED

Having reviewed the record with "meticulous deference" to the Sadeghians' chosen counsel, the Court finds Plaintiffs have not met their burden to warrant Clark's disqualification. *U.S. Fire Ins. Co.*, 50 F.3d 1313. The Court addresses Plaintiffs' three arguments in turn.

**1. Frivolous Arguments**

Plaintiffs contend the Motion to Dismiss' two primary arguments—that Plaintiffs were independent contractors, rather than employees, and this lawsuit is duplicative of a parallel state lawsuit—were frivolous. The Court agrees. Under Rule 12, arguments regarding Plaintiffs' failure to state a claim must be brought within twenty-one days of Plaintiffs' service of the live responsive pleading. *See* FED. R. CIV. P. 12(a)(1)(A)(i), (b)(6). Here, the Motion to Dismiss was filed nearly one year after Plaintiffs served the Second Amended Complaint. *See* Dkts. 15, 94. The Motion to Dismiss was therefore untimely, and wasted the Court's time and resources. In submitting these arguments to the Court at this juncture, Clark violated Texas Disciplinary Rule 3.01 and ABA Model Rule 3.1. *See* Dkts. 108, 113; TEX. DISCIPLINARY R. OF PRO. CONDUCT 3.01; ABA MODEL R. OF PRO. CONDUCT 3.1.

Even though the Motion to Dismiss was frivolously filed, the Court is not convinced that such a filing warrants the severe sanction of disqualification. In a disqualification inquiry, there must not only be attorney misconduct, but also a finding that society's interests will not be served if the lawyer continues to participate in the case—*i.e.*, the public's confidence in the legal system would be jeopardized. *See U.S. Fire Ins. Co.*, 50 F.3d at 1312, 1315; *In re Dresser*, 972 F.2d at 543–44. Here, the Court quickly disposed of the Motion to Dismiss, and the Court is well-equipped

10

to address any future misconduct. *See* Dkts. 108, 113. The Court finds, at this time, Clark's continued participation will not compromise the public's confidence in the legal system. Therefore, the severe sanction of disqualification is not warranted notwithstanding Clark's misconduct.

### 2. Whether the Factual Contentions in the Motion to Dismiss Have an Evidentiary Basis

As to Plaintiffs' second argument, the allegation that DuBose violated the ethical rules for soliciting business has some, albeit little, evidentiary support. Plaintiffs represent that Weimer sued Defendants in the 68th Judicial District Court of Dallas County, Texas. *See* Dkt. 110 at 3–4. The excerpted transcript submitted by Defendants provides, in relevant part:

Q. All right. And how did you meet Mr. DuBose?

A. He knocked on my door.

Q. At Macgregor?

A. Yes.

Q. And were you expecting him to knock on your door?

A. No.

. . .

Q. Okay. So then did you allow Mr. DuBose into the home?

A. I did.

Q. And I assume you sat down in one of the rooms and had a discussion?

A. We did.

. . .

Q. That day when you met Mr. DuBose, did you hire him as your attorney?

A. Yes.

11

Dkt. 94-2 at 7–8.

In response, Plaintiffs argue the submitted excerpt omits a page, which, if considered, would "make[] it clear that Mr. DuBose was not entering the house to solicit Mr. Weimer as a client, but to find out whether the house was owned by Mr. Sadeghian against whom David Jaco, one of Mr. DuBose's clients, had a judgment now in excess of $420,000." Dkt. 110 at 4. The testimony omitted from the Motion to Dismiss provides, in relevant part:

> Q.  All right. And did [DuBose] tell you why he was knocking on your door?
>
> A.  He just said that he has a client, another client, that is involved with a man named Khosrow Sadeghian that owns several properties, and he said, I believe this is one of his properties. Is it?
>
> Q.  And your response was?
>
> A.  It is.
>
> Q.  Okay. So then did you allow Mr. DuBose into the home?
>
> A.  I did.

Dkt. 110-1 at 2–3.

> Texas Disciplinary Rule 7.03(b) provides:
>
> A lawyer shall not solicit through in-person contact, or through regulated telephone, social media, or other electronic contact, professional employment from a non-client, unless the target of the solicitation is:
>
> (1) another lawyer;
>
> (2) a person who has a family, close personal, or prior business or professional relationship with the lawyer; or
>
> (3) a person who is known by the lawyer to be an experienced user of the type of legal services involved for business matters.

TEX. DISCIPLINARY R. OF PRO. CONDUCT 7.03(b). ABA Model Rule 7.3(b) is nearly identical. *See* ABA MODEL R. OF PRO. CONDUCT 7.3(b).

Comment 3 to Texas Disciplinary Rule 7.03 explains:

> A potential for overreaching exists when a lawyer, seeking pecuniary gain, solicits a person known to be in need of legal services via in-person [or other types] of contact. . . . The person, who may already feel overwhelmed by the circumstances giving rise to the need for legal services, may find it difficult to fully evaluate all available alternatives with reasoned judgment and appropriate self-interest in the face of the lawyer's presence and insistence upon an immediate response. The situation is fraught with the possibility of undue influence, intimidation, and overreaching.

TEX. DISCIPLINARY R. OF PRO. CONDUCT 7.03 cmt. 3. Comment 3 to ABA Model Rule 7.3 is also similar in form and substance. *See* ABA MODEL R. OF PRO. CONDUCT 7.3 cmt. 3.

Weimer's testimony supports the nonfrivolous inference that improper solicitation may have occurred. Attorneys have an affirmative duty to ensure their factual contentions have some evidentiary support, and here, the deposition testimony submitted indicates the potential of improper solicitation. Accordingly, the Court does not find a violation of Texas Disciplinary Rule 3.01 and ABA Model Rule 3.1 occurred. *See* TEX. DISCIPLINARY R. OF PRO. CONDUCT 3.01 (prohibiting a lawyer from bringing an issue before a court unless the lawyer reasonably believes a nonfrivolous basis exists for doing so); ABA MODEL R. OF PRO. CONDUCT 3.1 (same).

Because raising this allegation did not constitute misconduct, disqualification is not warranted on this basis. *See U.S. Fire Ins. Co.*, 50 F.3d at 1316 ("[D]isqualification is unjustified without at least a reasonable possibility that some identifiable impropriety actually occurred.").

### 3. Whether the Motion to Dismiss Was Filed to Harass DuBose

As for Plaintiffs' third argument, Plaintiffs have not shown the Motion to Dismiss was filed to harass DuBose. Clearly, DuBose and Defendants harbor much animosity towards one another—in both this federal proceeding and other state court proceedings. It is also clear the Motion to Dismiss was a frivolous submission. However, Plaintiffs did not attach the motion for sanctions filed in the state court proceeding to the Motion to Disqualify or offer any context as to why that

13

motion for sanctions lacked merit. *See Ledet v. Perry Homes*, No. 5:19-cv-712, 2020 WL 10352341, at *1 (W.D. Tex. Sept. 25, 2020) ("[T]his Court cannot make findings under the ethical rules if there is no factual support for the moving party's allegations."). It is Plaintiffs' burden to establish that misconduct occurred and that disqualification is warranted. *See Duncan*, 646 F.2d at 1028; *Spears*, 2020 WL 589538, at *2. Accordingly, because the Court cannot find a reasonable possibility that harassment actually occurred, the Court cannot grant disqualification on this basis. *See U.S. Fire Ins. Co.*, 50 F.3d at 1316.

### 4. The Court's Efficiency Considerations

This case's procedural history and the needs of the case weigh against disqualification. Prior to Clark's appearance in this lawsuit, Plaintiffs, Defendants, and Nizami submitted an inordinate number of filings, with the parties entrenched in a discovery dispute spanning nearly seven months. *See* Dkts. 47, 48, 51, 53, 54, 55, 56, 57, 58, 69, 70, 75, 78, 79, 82. Often, these filings were laced with hyperbolic language and the tone deployed was unbecoming of members of the bar. *See id.* The parties' conduct required the Court to expend considerable resources and time to wade through the filings—which often contained irrelevant commentary and information— and hold seven hearings within a limited time-frame. *See* Minute Entries for July 20, August 26, October 1, November 19, November 24, December 8, and December 18, 2020.

After Clark's appearance in this matter, the parties' discovery efforts appear to have progressed more efficiently. In the eight months since Clark began representing Defendants in this lawsuit, the parties have yet to contact the Court regarding a discovery dispute. This much-welcomed orderliness weighs against disqualifying Clark. *See DataTreasury Corp. v. Wells Fargo & Co.*, No. 2:06-cv-72, 2009 WL 10679840, at *9 (E.D. Tex. Dec. 30, 2009) ("Plaintiff now seeks

disqualification of [counsel]. The inefficiencies and delay of justice that would result from disqualification . . . [are] relevant considerations that weigh against disqualification.").

Overall, under these circumstances, Clark's continued representation of Defendants would not undermine the public's confidence in the integrity of the legal system. Plaintiffs have not carried their heavy burden to show that disqualification is warranted.

### D.   CLARK'S MISREPRESENTATIONS TO THE COURT

Although the Court does not find disqualification is warranted at this time, that does not mean Clark should proceed in this matter without a warning. Clark has, on two occasions, made misrepresentations to the Court. First, during the Court's January 28, 2021 Hearing, Clark described the Motion to Dismiss as a *pro se* filing. *See* Dkt. 105. It clearly was not. The Court's docketing system unequivocally shows the Motion to Dismiss was filed using Clark's electronic credentials and bears his signature. That Defendants may have drafted the Motion to Dismiss and insisted Clark file it did not absolve Clark of his duties to (1) "be ever conscious of the broader duty to the judicial system," (2) provide the Court "utmost respect," and (3) treat Plaintiffs with fairness and due consideration. LOCAL R. AT-3(a), (b), (f). Further, Clark's filing of the Motion to Dismiss may constitute violations of Rule 11(b)(2) and (3). *See* FED. R. CIV. P. 11(b)(2)–(3) (requiring all filings signed by an attorney to have a nonfrivolous legal or evidentiary basis). In this instance, these duties required Clark to abstain from filing the Motion to Dismiss, which contained threadbare, frivolous legal arguments.

Second, in his response to Plaintiffs' Motion seeking disqualification, Clark doubled down on characterizing the Motion to Dismiss as a *pro se* filing. *See* Dkt. 112 at 1 n.2. Rather than take responsibility for imprudently filing the Motion to Dismiss, Clark attempted to foist blame on the Clerk of Court. *See id.* It is true that the Clerk of Court marked the initial Motion to Dismiss as

deficient: Where a party is represented by an attorney, all filings made on behalf of that party must be appended by an attorney's signature, which certifies that Rule 11's requirements are met. *See* Dkt. 93; FED. R. CIV. P. 11. It is also true that the Clerk of Court said the correction should be made by one business day. *See* Dkt. 93. However, it is *not* true that the instruction to refile the Motion to Dismiss meant Clark could bypass his duties to ensure his filing had a nonfrivolous legal and evidentiary basis and to "adhere to the higher standard of conduct which judges, lawyers, clients, and the public may rightfully expect." *See* FED. R. CIV. P. 11(b)(2)–(3); LOCAL R. AT-3(k). Here, the proper course of action was to abstain from filing the Motion to Dismiss. Further, Clark should not have made *any* misrepresentation to the Court, let alone two.

The Court leaves Clark with the following warning: In future filings, Clark must ensure he has fully vetted the arguments and evidence contained therein. Failure to do so will not be tolerated and may result in sanctions imposed under Rule 11(b)(2) and (3).

### IV.   CONCLUSION

For the foregoing reasons, Plaintiffs' Motion (Dkt. 110) is **DENIED**.

**So ORDERED and SIGNED this 13th day of September, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE

16