IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **BILLY MARQUIS,** *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | Civil No. 4:19-cv-626-RWS-KPJ |
| **KHOSROW SADEGHIAN** and | § | |
| **AMY JO SADEGHIAN,** | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Plaintiffs Billy Marquis ("B. Marquis"), Alexis Marquis ("Al. Marquis"), and Anthony Marquis's ("An. Marquis") (together with B. Marquis and Al. Marquis, "Plaintiffs") Amended Motion for Certification (the "Motion") (Dkt. 115), wherein Plaintiffs request the Court certify a collective action in this matter. *See* Dkt. 115. Having considered the pleadings, the arguments of the parties, and the applicable law, the Court recommends the Motion (Dkt. 115) be **DENIED.**

## I.   BACKGROUND

### A. Factual History

Plaintiffs seek to recover against Defendants Khosrow Sadeghian ("Mr. Sadeghian") and Amy Jo Sadeghian ("Mrs. Sadeghian," and together with Mr. Sadeghian, "Defendants"), in part, for alleged violations of the Fair Labor Standards Act ("FLSA"). *See* Dkt. 15. According to Plaintiffs, Defendants purchase, sell, and lease properties to generate income; Defendants allegedly own more than 1,000 properties in Texas and elsewhere. *See id.* at 2. Plaintiffs allege Mr. Sadeghian, in particular, "has complete and absolute control" over Defendants' holdings and

conducts business under several names, such as Kamy Investments, Kamy Real Property Trust, and Kamy Real Estate Trust. *See id.*

Plaintiffs allege they, and others—including Juanita Marquis ("J. Marquis"), Aaron Sutterfield ("Sutterfield"), Anna De Luna ("De Luna"), Corey Record ("Record"), Paul Stansbery ("Stansbery"), and Shawna McKnight ("McKnight") (together, the "Proposed Collective")—were employed by Defendants. *See id.* at 5; Dkt. 128 at 2. Plaintiffs allege each member of the Proposed Collective was "treated similarly, and abominably, by [Defendants]." *See* Dkt. 115 at 7. According to Plaintiffs, each member worked as a "handyman" or "handywoman" repairing Defendants' properties and was paid "less than they had been promised when they took the job and always less than what the FLSA requires." *See* Dkt. 140 at 8; B. Marquis Decl., Dkt. 115-1, at 1–2; Stansbery Decl., Dkt. 115-2, at 2–3; De Luna Decl., Dkt. 115-3, at 2. Many of the Proposed Collective allegedly resided in housing provided by Defendants. *See* Dkt. 128 at 2; B. Marquis Decl., Dkt. 115-1, at 1–2; Stansbery Decl., Dkt. 115-2, at 1–2; De Luna Decl., Dkt. 115-3, at 2–3. According to Plaintiffs, each member tolerated Defendants' substandard working conditions out of fear of eviction. *See* Dkt. 128 at 2; B. Marquis Decl., Dkt. 115-1, at 2. Plaintiffs allege these employment conditions entitle them to proceed collectively to obtain relief under the FLSA. *See* Dkt. 15 at 5–6; Dkt. 115 at 7.

### B. Relevant Procedural History

Plaintiffs filed this lawsuit on August 27, 2019, asserting claims for negligence and for violations of both the FLSA and Texas Deceptive Trade Practices Act. *See* Dkt. 1. Plaintiffs amended their Original Complaint on October 21, 2019, and again on October 24, 2019. *See* Dkts. 12, 14–16. The Second Amended Complaint (Dkt. 15) is the live complaint in this matter.

On April 3, 2020, Plaintiffs filed the Motion for Conditional Certification of Collective Action (Dkt. 25). Three days later, on April 6, 2020, Plaintiffs filed the Amended Motion for Conditional Certification of Collective Action (Dkt. 27). Thereafter, the parties conducted limited discovery related to certification, *see* Dkt. 32, and on December 8, 2020, Defendants orally represented they did not oppose certification of a conditional class in this matter. *See* Dkt. 92 at 1. On January 4, 2021, the Court recommended that Plaintiffs' Amended Motion for Conditional Certification of Collective Action (Dkt. 27) be granted. *See* Dkt. 92. The Court based its recommendation on the two-stage conditional certification approach articulated in *Lusardi v. Xerox Corporation*, 118 F.R.D. 351 (D.N.J. 1987), which, at that time, was the prevailing standard among federal courts. *See* Dkts. 92, 101; *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) ("The Lusardi two-stage approach is the prevailing standard among federal courts and is the standard most frequently used by this court.").

On January 12, 2021, the United States Court of Appeals for the Fifth Circuit rejected the two-step *Lusardi* analysis and set forth a new framework for district courts to evaluate motions to certify collective actions. *See Swales v. KLLM Transp., L.L.C.*, 985 F.3d 430 (5th Cir. 2021). In light of the new *Swales* framework, the Court withdrew its Report and Recommendation (Dkt. 92), *see* Dkt. 101, and Plaintiffs' Amended Motion for Conditional Certification of Collective Action (Dkt. 27) was denied without prejudice. *See* Dkts. 107, 113. The Court then ordered limited discovery relevant to whether certification is proper under *Swales*. *See* Dkt. 111.

On June 1, 2021, Plaintiff filed the Motion (Dkt. 115), arguing that certification remains proper under *Swales*. Defendants filed a response opposing the Motion (Dkt. 116), to which Plaintiffs filed a reply (Dkt. 118) and Defendants filed a sur-reply (Dkt. 122). Subsequently,

without leave, the parties filed additional briefing regarding certification. *See* Dkts. 126, 128, 129, 139, 140.

## II. LEGAL STANDARD

The Fifth Circuit recently articulated "a workable, gatekeeping framework" for district courts to assess, at the outset of litigation, whether collective action certification is appropriate. *Swales*, 985 F.3d at 433. Under *Swales*, certification depends on whether the proposed plaintiffs are similarly situated such that merits questions can be answered collectively. *Id.* at 442. The district court must "rigorously scrutinize the realm of 'similarly situated' workers, and must do so from the outset of the case," taking care to resolve the certification issue as early as possible. *Id.* at 434, 441. In doing so, the district court must first identify which facts and legal considerations will be material to determining whether the members of the proposed collective are similarly situated. *Id.* at 441. Then it must authorize preliminary discovery accordingly. *Id.*

Under *Swales*, the district court's discretion to certify a collective action is cabined by only two principles: "(1) the FLSA's text, specifically § 216(b), which declares (but does not define) that only those 'similarly situated' may proceed as a collective; and (2) the Supreme Court's admonition that while a district court may 'facilitat[e] notice to potential plaintiffs' for case management purposes, it cannot signal approval of the merits or otherwise stir up litigation." *Id.* at 434, 443 (alteration in original). Importantly, while the district court must look to the merits of the controversy to determine whether the potential plaintiffs are similarly situated, it must "avoid even the appearance of judicial endorsement of the merits of the action. No judicial thumbs (or anvils) on the scale." *Id.* at 436 (quoting *Hoffman La-Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)).

The plaintiff, alone, bears the burden of proving the members of the proposed collective are similarly situated. *See Swales*, 985 F.3d at 443 n.65. This is an exacting standard: the plaintiff must establish, at the outset of the litigation, "a 'demonstrated similarity' among the purported class members, as well as a 'factual nexus' that binds the class members' claims together such that hearing the claims in one proceeding is fair to all parties and does not result in an [unmanageable] trial of individualized inquiries." *Alvarez v. NES Global LLC*, No. 4:20-cv-1933, 2021 WL 3571223, at *2 (S.D. Tex. Aug. 11, 2021) (quoting *Cotton-Thomas v. Volvo Grp. N. Am., LLC*, No. 3:20-cv-113, 2021 WL 2125003, at *2 (N.D. Miss. May 25, 2021)). This generally requires an affirmative showing by the plaintiff that each member of the proposed collective was: (a) similarly covered by the FLSA's overtime-pay protections, and (2) similarly denied minimum or overtime wages by their common employer. *Rosales v. Indus. Sales & Servs., LLC*, No. 6:20-cv-30, 2021 WL 4480747, at *9 (S.D. Tex. Sept. 30, 2021); *see Schnelle v. Chevron U.S.A. Inc.*, No. MO:20-cv-112, 2021 WL 2773010, at *3 (W.D. Tex. Jan. 28, 2021), *report and recommendation adopted*, 2021 WL 2773008 (W.D. Tex. Mar. 27, 2021), ("[T]he plaintiff must show that the employees have substantially similar job requirements and are subject to the same common compensation scheme."); *see also Swales*, 985 F.3d at 441–42 (holding when "the plaintiffs all have the same job description and the allegations revolve around the same aspect of that job," certification should be granted.).

Courts applying *Swales* regularly certify collective actions where the plaintiff demonstrates that each member of the proposed collective had the same job title or job description and was similarly paid for their work. *See Collins v. Pel-State Bulk Plant, LLC*, No. 20-cv-83, 2021 WL 5234968, at *3 (W.D. Tex. Sept. 29, 2021) (certifying a collective action when each member of the proposed collective shared the same job titles, performed the same job duties, was subject to

5

the same expectations, and was compensated in the same manner); *Sterling v. Greater Hous. Transp. Co.*, No. H-20-910, 2021 WL 2954663, at *2–3 (S.D. Tex. July 14, 2021) (same); *see also Rosales*, 2021 WL 4480747, at *10 (refusing to certify a collective action, in part, because the plaintiff did not establish the job description of each member of the proposed collective); *Schnelle*, 2021 WL 2773010, at *3 (refusing to certify a collective action when the plaintiff generally stated that each member of the proposed collective "'perform[ed] similar job duties' to him," but failed to provide specific details revealing how each member performed similar job duties to the plaintiff).

In contrast, courts refuse to certify collective actions if certification would require the court to evaluate, on an individual basis, whether and to what extent the proposed class members' rights were violated. For example, courts have refused to certify collective actions where the plaintiffs failed to establish either that each member of the proposed collective performed the same job duties or that each member of the proposed collective was subject to the same compensation policy. *See Clark v. Contract Land Staff, LLC*, No. H-20-2620, 2021 WL 4071150, at *3 (S.D. Tex. Aug. 2, 2021) (denying certification where all of the proposed class members were "Right of Way Agents" but had varying job duties); *Hebert v. TechnipFMC USA, Inc.*, No. 4:20-cv-2059, 2021 WL 1137256, at *5 (S.D. Tex. Feb. 8, 2021) (denying certification where all of the proposed class members were engineers but had varying job duties); *see also Young v. Energy Drilling Co.,* 534 F. Supp. 3d 720, 724–25 (S.D. Tex. 2021) (certifying a collective action, even though the proposed class members performed different job duties, because each employee was subject to the same pay policy).

While the district court must consider all evidence presented by the plaintiff in support of certification, the district court maintains "broad, litigation-management discretion" to either certify

6

the collective, refuse to certify the collective, or order additional discovery to aid in the district court's determination. *Swales*, 985 F.3d at 443.

### III. ANALYSIS

Plaintiffs argue collective action is appropriate because: (1) each member was employed as a handyman or handywoman by Defendants, and (2) Defendants failed to pay each member minimum wages and overtime compensation. Even assuming, however, that each member was an employee with rights under the FLSA, Plaintiffs' evidence does not show that each member was similarly situated, as required to pursue a collective action under the FLSA.[1] First, Plaintiffs' evidence does not set forth the job duties performed by each member of the Proposed Collective, let alone establish that each member performed the same job duties. Second, Plaintiffs' evidence does not establish that each member of the Proposed Collective was subject to the same pay policy.

**A. Plaintiffs' Arguments and Evidence in Support of Collective Action Certification**

Plaintiffs argue each member of the Proposed Collective was similarly employed by Defendants. *See* Dkt. 115; Dkt. 128 at 2; Dkt. 140 at 8. Stansbery testified that he, along with McKnight and Record, "worked from 7 am to 9 pm seven days a week" performing "electrical work, plumbing, roofing, and a long list of other jobs [they] were not trained to do." *See* Stansbery Decl., Dkt. 115-2, at 2. De Luna testified that she worked "four to seven days a weeks [sic], each day beginning at 6 a.m. and ending at 8 p.m." *See* De Luna Decl., Dkt. 115-3, at 2. De Luna further testified that she performed "electrical work, sheet rock, flooring, painting, demolition, landscaping, and more" for Defendants. *See id.* B. Marquis testified that he, along with J. Marquis,

---

[1] Plaintiffs are required to establish that the members of the Proposed Collective were: (1) similarly nonexempt from the FLSA's overtime pay protections; and (2) similarly situated such that proceeding collectively would not result in a trial of individualized inquiries. Because Plaintiffs failed to establish the members of the Proposed Collective were similarly situated, the Court need not decide whether the members of the Proposed Collective were entitled to protection under the FLSA. *See Rosales*, 2021 WL 4480747, at *10 n.13.

7

Al. Marquis, and An. Marquis, worked "at least five days a week and frequently six or seven," often working ten or twelve hours per day for Defendants. *See* B. Marquis Decl., Dkt. 115-1, at 1–2. B. Marquis testified Defendants "told [them] what to do, when to do it, and how to do it." *See id.* at 1. B. Marquis further testified that he was responsible for distributing payments from Defendants to others who worked alongside B. Marquis. *See id.* at 2 ("Twice a month [Defendants] would give me a check written on their person [sic] bank account to pay myself and all those who worked with me."). B. Marquis testified that Defendants instructed him, in writing, as to the amount to be distributed to each individual. *Id.*; *see, e.g.*, Dkt. 115-1 at 4–13. Proposed class members J. Marquis, Sutterfield, De Luna, and Record were among those individuals to whom B. Marquis distributed payments. *See id.* at 3.

Plaintiffs presented evidence that Defendants promised Plaintiffs varying compensation arrangements for work performed on Defendants' behalf. B. Marquis, for example, testified that Mr. Sadeghian promised to pay him $3,000 to $4,000 per month, as well as provide free housing for B. Marquis and his family. *See* B. Marquis Decl., Dkt. 115-1, at 1. Stansbery testified that Mr. Sadeghian promised to pay him, McKnight, and Record $500 each per week, with free housing included. *See* Stansbery Decl., Dkt. 115-2, at 1. De Luna testified that Mr. Sadeghian promised to pay her "on a daily basis dependent on how many hours [she] worked," but in no event less than $100 per day. *See* De Luna Decl., Dkt. 115-3, at 2.

Plaintiffs further contend each member of the Proposed Collective was similarly underpaid. *See* Dkt. 140 at 5. Plaintiffs cite to the following evidence in support of their contention: (1) De Luna did not receive $100 per day of work, *see* De Luna Decl., Dkt. 115-3, at 2; (2) McKnight and Stansbery were collectively paid $500 per week instead of $500 each, *see* Stansbery Decl., Dkt.

115-2, at 2; and (3) B. Marquis was paid "a salary of $750, twice a month"—not $3,000-$4,000 per month, *see* B. Marquis Decl., Dkt. 115-1. *See* Dkt. 140 at 5.

According to Plaintiffs, each member of the Proposed Collective was "treated similarly, and abominably, by [Defendants]." *See* Dkt. 115 at 7. Plaintiffs argue each member of the Proposed Collective was provided substandard housing by Defendants and forced to work for Defendants or face eviction. *See* Dkt. 128 at 2; B. Marquis Decl., Dkt. 115-1, at 2. According to Plaintiffs, the similarities shared by members of the Proposed Collective render certification proper.

### B. Defendants' Arguments and Evidence Opposing Collective Action Certification.

Defendants oppose the Motion, arguing Plaintiffs failed to establish that those in the Proposed Collective were: (1) employees of Defendants, as opposed to independent contractors; and (2) similarly situated such that certification should be granted. *See* Dkts. 116, 122, 139. Defendants' response is supported by the Declaration of Khosrow Sadeghian and attached exhibits, which Defendants argue establish that the members of the Proposed Collective were not entitled to protection under the FLSA. *See* Dkt. 116-1.

Plaintiffs challenge the legitimacy of the exhibits attached to the Declaration of Khosrow Sadeghian. *See* Dkt. 118; B. Marquis Decl., Dkt. 118-1, at 1 ("Many of [Defendants' exhibits] are misleading and some are outright forgeries and frauds."). On September 16, 2021, the Court held a hearing to address Plaintiffs' challenge to the legitimacy of such exhibits and the Court's concerns regarding same. *See* Dkts. 130, 136. The Court raised the following concerns regarding Defendants' exhibits: (1) in defense exhibits purportedly signed by B. Marquis, the signatures are not consistent in appearance; (2) Mrs. Sadeghian notarized an affidavit offered to support Defendants' response (the "Nash Affidavit"), despite having a vested interest in this matter; and

9

(3) exhibits, such as bank statements, invoices, and checks, are not supported by a sworn statement authenticating such documents. *See* Dkt. 130.

The evening before the hearing—and only after the Court articulated its concerns regarding Defendants' exhibits[2]— Defendants filed the Business Records Affidavit of Amy Sadeghian (the "Business Records Affidavit") (Dkt. 135), which states the challenged exhibits are true and correct copies of records that were kept by Kamy Real Property Trust in the regular course of business. *See* Dkt. 135. The Business Records Affidavit includes as exhibits: (a) a federal tax form showing one variation of B. Marquis's signature and a municipal form showing a different variation of B. Marquis's signature for purposes of authenticating the inconsistent signatures in the challenged exhibits; and (b) a photograph of a handwritten letter allegedly signed by Jacky Nash, which Mrs. Sadeghian claims she reviewed before she notarized the Nash Affidavit, thereby legitimizing the Nash Affidavit. *See* Dkt. 135. At the hearing, Defendants argued the Business Records Affidavit and its attachments should assuage the Court's concerns regarding the legitimacy and reliability of Defendants' exhibits. Moreover, Defendants offered to withdraw the exhibits bearing signatures appearing to be illegitimate.

If anything, the Business Records Affidavit and Defendants' offer to withdraw documents appearing to be unreliable highlight the Court's concerns regarding Defendants' exhibits. For example, Mrs. Sadeghian states in the Business Records Affidavit—under the penalty of perjury—that she notarized the Nash Affidavit *after* she reviewed the handwritten letter signed by Jacky

---

[2] Plaintiffs filed their reply (Dkt. 118) challenging Defendants' exhibits on July 16, 2021. *See* Dkt. 118. Defendants responded on July 20, 2021, but failed to meaningfully address Plaintiffs' challenge. *See* Dkt. 122. Defendants filed the Business Records Affidavit on September 15, 2021—nearly two months after their initial response to Plaintiffs' challenge and only after the Court articulated its concerns regarding Defendants' exhibits.

Nash. *See* Dkt. 135 at 2.[3] However, the handwritten letter is dated September 13, 2021—almost two years after Mrs. Sadeghian notarized the Nash Affidavit. *Compare* Dkt. 116-5 at 17 *with* Dkt. 135 at 10. Mrs. Sadeghian obviously could not have reviewed the written letter before notarizing the Nash Affidavit in 2019. This untruthful statement validates the Court's concerns that Defendants' exhibits are not trustworthy. As does Defendants' offer to withdraw the questionable exhibits: if the exhibits were legitimate and trustworthy, there would be no need to withdraw any of them.

A district court may, in its discretion, refuse to rely on business records the district court believes are untrustworthy. *See Vand. Mortg.& Fin., Inc. v. Flores*, 789 F. Supp. 2d 750, 762 (S.D. Tex. 2011) (quoting *Potamkin Cadillac Corp. v. B.R.I. Coverage Corp.,* 38 F.3d 627, 633 (2d Cir. 1994)) ("The determination of whether a record is sufficiently reliable to warrant its admission is within the 'sound discretion' of the district court."); *see also United States v. Wells*, 262 F.3d 455, 459–60 (5th Cir. 2001) (quoting *Miss. River Grain Elevator, Inc. v. Bartlett & Co.*, 659 F.2d 1314, 1319 (5th Cir. 1981)) (stating whether evidence is admissible under the business records exception is "chiefly a matter of trustworthiness"). Because the Court finds the Business Records Affidavit and challenged exhibits are untrustworthy, the Court relies solely on Plaintiffs' evidence in determining whether Plaintiffs met their burden to establish that collective action certification is proper. *See Swales*, 985 F.3d at 443 n.65 (specifying that it is the plaintiff's burden to establish that certification is proper).

---

[3] "Attached as exhibit C is a true and correct copy of a handwritten letter signed by Jacky Nash and given to me with a copy of his driver's license. **Based on reviewing this, I notarized his affidavit** submitted to the Court, after witnessing him sign the affidavit in my presence as a Notary." *See* Dkt. 135 at 2 (emphasis added).

### C. Plaintiffs failed to show that certification is proper.

1. <u>Plaintiffs failed to show that members of the Proposed Collective performed the same job duties.</u>

Plaintiffs' evidence does not show that each member of the Proposed Collective performed the same job duties. As an initial matter, Plaintiffs' evidence fails to identify the job duties performed by four members of the Proposed Collective: Al. Marquis, An. Marquis, J. Marquis, and Sutterfield. Plaintiffs did not put forth an affidavit, deposition testimony, or other evidence to establish the work performed by these members. Instead, Plaintiffs' evidence merely presents that "[Defendants] told [them] what to do, when to do it, and how to do it" and that such individuals worked alongside B. Marquis. *See* B. Marquis Decl., Dkt. 115-1. Plaintiffs, therefore, failed to show that each of the foregoing members was similarly situated based on the work they performed for Defendants. *See Schnelle*, 2021 WL 2773010, at *3 (holding the plaintiff failed to meet his burden based on "the bare assertion that the putative class members 'perform similar job duties'" absent "specific details revealing how [such individuals] performed similar job duties").

Second, Plaintiffs' evidence suggests the other members of the Proposed Collective performed different job duties. Stansbery, McKnight, and Record performed "electrical work, plumbing, roofing, and a long list of other jobs . . . ." *See* Stansbery Decl., Dkt. 115-2, at 2. Although De Luna performed electrical work, as well, De Luna also performed "sheet rock, flooring, painting, demolition, landscaping, and more"—job duties that the evidence does not indicate Stansbery, McKnight, or Record performed. *See* De Luna Decl., Dkt. 115-3, at 2. Further, B. Marquis testified generally that he was hired by Mr. Sadeghian to "do maintenance and repairs on [Defendants'] properties," but B. Marquis failed to articulate what labor, if any, he actually performed for Defendants. *See* B. Marquis Decl., Dkt. 115-1. Rather, Plaintiffs' evidence

12

establishes only that B. Marquis was responsible for distributing payments to others who performed work for Defendants. *See* B. Marquis Decl., Dkt. 115-1, at 2.

Plaintiffs argue, nonetheless, that the members of the Proposed Collective are similarly situated because they each performed repairs on Defendants' properties. *See* Dkt. 140 at 8. But Plaintiffs' argument is far too generalized for the Court to find that the members are similarly situated. Indeed, other courts have declined to certify collective actions based on such general statements. For example, in *Hebert*, certification was denied where the plaintiff established that each member of the proposed collective performed engineering work, but where the plaintiff failed to establish that each engineer performed the same job duties. *See Hebert*, 2021 WL 1137256, at *5 (holding that even if the professional exemption did not apply, the plaintiff "fail[ed] to meet his burden show [sic] common job duties or job description."); *see also Clark*, 2021 WL 4071150, at *3 (denying collective action certification where members of the proposed collective were all "Right of Way Agents" but had varying job duties). Here, as in *Hebert*, absent evidence that each member performed the same job duties, it is insufficient for Plaintiffs to claim that the members of the Proposed Collective are similarly situated because each member served generally as a "handyman" or "handywoman." Therefore, Plaintiffs' evidence does not establish the members of the Proposed Collective performed the same job duties.

    2. <u>Plaintiffs failed to show the members of the Proposed Collective were similarly compensated.</u>

Plaintiffs also failed to establish that the members of the Proposed Collective were similarly compensated and thus, similarly aggrieved. According to Plaintiffs' evidence, the members of the Proposed Collective had varying regular rates of pay and, thus, varying overtime rates of pay. The evidence suggests Defendants promised to compensate some employees (e.g., B. Marquis, McKnight, Stansbery, and Record) with what appears to be a salary and free housing.

13

*See* B. Marquis Decl., Dkt. 115-1, at 1 (stating he was promised $3,000–4,000 per month plus free housing); Stansbery Decl., Dkt. 115-2, at 1 (stating he, McKnight, and Record were promised $500 each per week plus free housing). However, the evidence suggests Defendants paid other employees, like De Luna, hourly and without a housing accommodation. *See* De Luna Decl., Dkt. 115-3, at 1–2. Plaintiffs' evidence is silent as to the compensation arrangements entered between Defendants and the remaining members of the Proposed Collective.

And although Plaintiffs generally allege that Defendants failed to pay the proposed class members all wages due, Plaintiffs fail to articulate a common pattern or practice underlying Defendants' failure to pay such wages. In *Young*, for example, the plaintiff provided evidence that each member of the proposed collective was paid pre-determined, non-discretionary bonuses regardless of the member's assigned job duties. *See Young*, 534 F. Supp. 3d at 724–25. The plaintiff argued the defendant violated the FLSA by failing to consider such bonuses when calculating each member's regular and overtime rates of pay. *See id.* The *Young* court found the members of the proposed collective were similarly situated because the plaintiff presented evidence that each member was subject to the same policy for calculating regular and overtime pay. *See id.*

Here, Plaintiffs provided no such evidence. Were this action to proceed collectively, the Court would be required to separately analyze whether the compensation received by each member violated the FLSA based on the hours worked and the compensation received. Plaintiffs' evidence, in short, does not enable the Court to collectively determine whether the members of the Proposed Collective are entitled to recover under the FLSA. On balance, Plaintiffs failed to show a demonstrated similarity between the members of the Proposed Collective that would warrant certifying a collective action.

### D. Additional discovery is not appropriate.

When faced with a request to certify a collective action, district courts have wide latitude to: (a) certify the collective action; (b) refuse to certify the collective action; or (c) order additional discovery to enable the district court to determine whether the proposed class members are "similarly situated." *Swales*, 985 F.3d at 443. In this case, Plaintiffs had ample opportunity to conduct discovery relevant to certification. Early in this litigation, Plaintiffs were given five months to conduct discovery relevant to pre-*Swales* conditional certification. *See* Dkt. 32. Then, in the advent of *Swales*, Plaintiffs were given an additional three and a half months to conduct discovery relevant to certification under *Swales*. *See* Dkt. 111. Even so, Plaintiffs failed to meet their burden. The Court thus finds Plaintiffs are not entitled to additional discovery before the Amended Motion is decided.

## IV.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Court recommends the Motion (Dkt. 115) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir.

1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 30th day of December, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE