IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BILLY MARQUIS, ALEXIS MARQUIS ANTHONY MARQUIS INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | § § § § § | |
| PLAINTIFFS | § § | |
| v. | § § § | CIVIL ACTION NO. 4:19-CV-00626-RWS |
| AMY SADEGHIAN AND KHOSROW SADEGHIAN, d/b/a KAMY INVESTMENTS, KAMY REAL PROPERTY TRUST and KAMY REAL ESTATE TRUST | § § § § § § | |
| DEFENDANTS | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT, WITH BRIEF IN SUPPORT**

**TO THE HONORABLE U.S. MAGISTRATE JUDGE:**

**COMES NOW,** Amy Sadeghian and Khosrow Sadeghian, d/b/a Kamy Investments, Kamy Real Property Trust and Kamy Real Estate Trust (collectively "Defendants"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56, who respectfully submit their Motion for Summary Judgment (the "Motion") on Plaintiff's Third Amended Complaint (Doc. 150-1) filed by Plaintiff Billy Marquis ("Billy" or "Plaintiff")[1]. In support of their Motion, Defendants would show the Court the following:

**BASIS FOR SUMMARY JUDGMENT**

The fatal flaw in Marquis' claim, is his belief that he is entitled to overtime payments even though he was an independent contractor. Marquis seeks damages as if he was an hourly employee,

---

[1] Plaintiffs include Billy's family members, Alexis Marquis and Anthony Marquis. Since their claims are derivative of Billy's, if Billy's claims fail, then their claims fail as well.

Defendants' Motion for Summary Judgment                                                                                         1

mainly unpaid wages, overtime, liquidated damages, and other relief under the Fair Labor Standards Act ("FLSA").

Defendants will show that the evidence establishes, as a matter of law, that Plaintiff does not have any viable claims as Plaintiff was working for Defendants as an independent contractor. Working as an independent contractor legally precludes all of Marquis' purported FLSA claims for unpaid wages, overtime and liquidated damages.

Secondly, Plaintiff claims that Defendants were negligent; however, the law that Plaintiff's cite – 406.033(a) of the Texas Labor Code – precludes the negligence claim from moving forward because Plaintiff is an independent contractor and not an employee.

Thirdly, Plaintiffs' claim for a purported violation of the Deceptive Trade Practices Act ("DTPA") is defective because Plaintiffs would not qualify as consumers under the act and Defendants did not engage in any unconscionable act under the DTPA. Moreover, the complaint on its face shows that the DTPA claim is time-barred as Plaintiff failed to give the requisite 60 day DTPA notice before filing suit.

Lastly, Plaintiffs claim that Defendants committed spoilation. There is no factual basis to assert this cause of action and Plaintiffs have not presented any evidence to back up this baseless assertion; moreover, as stated by law, spoilation cannot be a cause of action on its own. Plaintiffs bear the burden of proving spoilation. Here despite having ample time to conduct discovery in accordance with regular litigation practice, Plaintiffs have failed to show where and how such spoilation occurred or what prejudice they suffered. Therefore, it should be dismissed on its face.

Thus, it is legally proper to dismiss the aforementioned causes of action. Once these are dismissed there are no remaining factual or legal issues to adjudicate. As such Defendants request

that the Court grant this motion for summary judgment and dismiss Plaintiffs' complaint with prejudice.

## MEMORANDUM OF LAW

### I.    Applicable Legal Standards.

A.    **Legal Standard Concerning Rule 56**

Rule 56 of the Federal Rules of Civil Procedure provides that a court may pierce the pleadings and assess the proof to determine whether there is a genuine need for trial. See. *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

Summary judgment is proper if the movant shows that there are no genuine issues of material fact, and that the movant is entitled to judgment as a matter of law. FRCP 56(a); *Tolan v. Cotton,* 572 U.S. 650, 656-57 (2014); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). While we view the evidence in a light most favorable to the non-movant, See. *Coleman v. Houston Indep. Sch. Dist.,* 113 F.3d 528, 533 (5th Cir.1997), in order to avoid summary judgment, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial. See. *Celotex* at 91. If the evidence is such that a reasonable jury could return a verdict for the non-movant, there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, if the non-movant fails to present facts sufficient to support an essential element of his claim, summary judgment is appropriate. See*. Celotex* at 323.

B.    **Legal Standard for Fair Labor Standard Act Cause of Action**

To determine if a worker qualifies as an employee [under the FLSA], [the Court will] focus on whether, as a matter of economic reality, the worker is economically dependent upon the alleged employer or is instead in business for himself." *Hopkins v. Cornerstone Am.,* 545

F.3d 338, 343 (5th Cir.2008). To aid in this inquiry, we consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; and (5) the permanency of the relationship. *Id.* The ultimate determination of whether an individual is an employee under the FLSA is a legal, and not a factual, finding. *Brock v. Mr. W Fireworks, Inc.,* 814 F.2d 1042, 1045 (5th Cir.1987). Accordingly, [the Court will] "review the determination that [plaintiffs] were not employees as we review any determination of law," de novo. *Donovan v. Am. Airlines, Inc.,* 686 F.2d 267, 270 n. 4 (5th Cir.1982).

These factors are not exhaustive, nor can they be applied mechanically to arrive at a final determination of employee status. Rather, they must always be aimed at an assessment of the "economic dependence" of the putative employees, which is a touchstone for the totality of the circumstances test. *See, e.g., Robicheaux,* 697 F.2d at 665 ("whether the employees 'as a matter of economic reality are dependent upon the business to which they render service.'") (quoting *Mednick v. Albert Enterprises, Inc.,* 508 F.2d 297, 299 (5th Cir. 1975) (quoting *Bartels v. Birmingham,* 332 U.S. 126, 67 S.Ct. 1547, 1550, 91 L.Ed. 1947 (1947)).

**C.     Legal Standard for Negligence as it Relates to Employees versus Independent Contractors**

"Under Texas law, negligence consists of four essential elements: (1) a legal duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) an actual injury to the plaintiff; and (4) a showing that the breach was the proximate cause of the injury." *Gutierrez v. Excel Corp.,* 106 F.3d 683, 687 (5th Cir.1997) (citing *Skipper v. United States,* 1 F.3d 349, 352 (5th Cir.1993)). Gross negligence has two requirements: "(1) viewed objectively from the standpoint

of the actor, the act or omission must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others, and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed with conscious indifference to the rights, safety, or welfare of others." *Henderson v. Norfolk Southern Corp.,* 55 F.3d 1066, 1070 (5th Cir.1995).

Owners of a property do "not have a duty to see that an independent contractor performs the work in a safe manner." *Redinger v. Living,* 689 S.W.2d 415, 418 (Tex. 1985). A duty of care for employees of independent contractors only arises when the ability to control that employee's actions exists. *Id.;* Tex. Civ. Prac. & Rem.Code § 95.003. To prove control in absence of a contractual agreement, the employee must show the contractor "actually exercised control over the manner in which the independent contractor's work was performed". *Dow Chemical Co. v. Bright,* 89 S.W.3d 602, 606 (Tex.2002). "[M]erely *exercising or retaining* a general right to recommend a safe manner for the independent contractor's employees to perform their work" is insufficient to subject a party to liability. *Id*. at 607 (emphasis added). Instead, the contractor must have the right to control the "means, methods, or details of the independent contractor's work". *Elliott–Williams Co., Inc. v. Diaz,* 9 S.W.3d 801, 804 (Tex.1999). Further, "the control must relate to the injury the negligence causes". *Bright*, 89 S.W.3d at 607. In *Bright*, the Texas Supreme Court held there was no contractor liability when the injured party could not show the contractor was "involved in any manner with controlling the timing and sequence" of the injured party's work, and the contractor did not "decid[e] which ... employees should perform which task and at what point in time". *Id.* at 609."

Here, Defendants exercised little to no control over Plaintiffs. Plaintiffs were free to perform construction services as they saw fit.[2] Other than generic project deadlines they were not given any specific timelines or instructions regarding how to perform the work, like most independent construction contractors they were hired to fix the properties that Defendant owned.[3]

### D. Legal Standard for Deceptive Trade Practices Act

In order to have standing to recover under the DTPA, plaintiffs must prove that they are consumers, that defendants engaged in a false, misleading, or deceptive act, and the act constituted a producing cause of their damages. Here the evidence unequivocally shows that Plaintiffs lack standing to bring a DTPA claim because they do not qualify as consumers. *See Doe v. Boys Clubs,* 907 S.W.2d 472, 478 (Tex.1995); Tex. Bus. & Com.Code Ann. § 17.50(a)(1) (Vernon Supp.2002). "A consumer is an individual who 'seeks or acquires by purchase or lease, any goods or services.' " *Nast v. State Farm Fire and Cas. Co.,* 82 S.W.3d 114, 122 (Tex.App.—San Antonio 2002, no pet.) (quoting Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon Supp.2002)). "Whether or not a plaintiff is a consumer is a question of law, unless there is a dispute concerning factual issues that create consumer status." *Id.* (citing *Lukasik v. San Antonio Blue Haven Pools, Inc.,* 21 S.W.3d 394, 401 (Tex.App.—San Antonio 2000, no pet.)). Plaintiffs were independent contractors that were hired by Defendants to perform construction services, while temporary housing was provided as a part of the services agreement it never altered the relationship between Plaintiffs and Defendant.[4]

---

[2] Defendant Khosrow Sadeghian's Deposition Testimony, page 32, lines 2 – 6.
[3] Defendant Khosrow Sadeghian's Deposition Testimony, page 44, lines 2 – 6.
[4] Defendant Khosrow Sadeghian's Deposition Testimony, page 50, lines 9 – 20.

Moreover, Plaintiff's complaint was filed more than two years from the alleged unconscionable course of conduct and is barred as a matter of law by Tex.Civ.Prac.& Rem.Code §17.565.

### E. Legal Standard for Spoilation

Texas law does not recognize an independent cause of action for spoilation. See. *Trevino v. Ortego,* 969 S.W.2d 950, 952–53 (Tex.1998). In as much as the Plaintiffs' complaint alleges a cause of action for spoilation, they have failed to provide any evidence to support this claim. Moreover, statutorily Plaintiffs don't have standing to bring this claim under the rule in *Trevino*. *Adams v. City of Balcones Heights,* SA-03-CA-0219-XR, 2004 WL 1925444 at 9. (W.D.Tex. Aug. 27, 2004). In *Adams,* Plaintiffs allege that Defendants have evidence that "mysteriously disappeared;" however, as stated above, Texas does not recognize it as an independent cause of action and, therefore, have failed to state for a claim for which relief can be granted.

## II. Legal Argument.

**Marquis' Claim that Defendants Violated the FLSA is Improper**

The factual allegations in Plaintiffs' complaint purport to establish that Plaintiffs were employees of Defendants. Pursuant to their assertion, Plaintiffs claim that they are owed overtime wages, liquidated damages and attorney's fees. Plaintiffs' claims are improper. See. Paragraph 10 of the Complaint (Doc. 150-1), which asserts that Plaintiffs worked overtime and were not compensated for the work.

In order to determine if a person is a contractor the Court will consider five non-exhaustive factors: (1) the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and the alleged employer; (3) the degree to which the worker's opportunity for profit or loss is determined by the alleged employer; (4) the skill and initiative

required in performing the job; and (5) the permanency of the relationship.[5] Here Plaintiffs were skilled tradesman that worked on several different construction projects simultaneously (as evidenced by the company beginning in the early 1990s)[6], Defendants exercised little to no control over Plaintiffs' work[7], Plaintiffs had little to no investment in the projects as the homes were owned by Defendants and Plaintiffs were free to move or resign at will. Moreover, Plaintiffs were free to obtain outside employment in any manner they saw fit. Lastly, Plaintiffs had to use their construction skills in order to perform the services for Defendants. Thus, the Court in applying the rule should find that Plaintiffs unequivocally qualify as an independent contractor under the law.

### A. Control Exercised by Alleged Employer

Defendants did not exercise control over Plaintiffs. In order to qualify as an independent contractor, the person in question, here Plaintiffs, must control meaningful aspects of the work performed such that it is possible to view the worker as a person conducting his or her own business. The evidence shows that Plaintiff, Billy Marquis had control over his day-to-day projects as he was able to begin and stop work when he wanted and while performing services he was able to designate which steps to take, and exercised complete control with respect to how the projects were managed.[8] He also got to designate what materials were used in fixing the properties. Khosrow Sadeghian in his deposition stated, "[a]nd there was nobody there that was there watching them all day or anything like. We had no control over him." Basically, he was his own boss."[9] Plaintiff was given jobs to do around Defendants' properties and "as a contractor, [he] had deadlines to meet on things,"[10] which allowed Plaintiff to pick and choose the jobs he thought

---

[5] See Section B for Legal Standard for FLSA.
[6] Plaintiff Billy Marquis Deposition Testimony, page 93, lines 23 – 24.
[7] Plaintiff Billy Marquis Deposition Testimony, page 24, lines 17 – 24.
[8] Plaintiff Billy Marquis Deposition Testimony, page 48, lines 3 – 6.
[9] Defendant Khosrow Sadeghian's Deposition Testimony, page 32, lines 2 – 6.
[10] Defendant Khosrow Sadeghian's Deposition Testimony, page 44, lines 6 – 7.

Defendants' Motion for Summary Judgment                                                                                              8

would be good for his team. Defendant also pulled permits for Plaintiff so that he could work his contract labor on those specific jobs.[11] Billy Marquis stated that he advertised on Angie's List and that he's a certified contractor.[12] Additionally, Marquis has a tax ID registration for his construction business.[13] Billy Marquis also stated that he brought his tools to the job site[14].

>   Q: What tools did you bring to the job?
>
>   A: Just personal stuff, like our hammers and things like that we wanted ourselves.
>
>   Q: Okay. Hammers, saws.
>
>   A: Cordless tools, things like that.

Statements made by both Plaintiff and Defendants specifically indicate that Plaintiff is an independent contractor. Billy Marquis has his own construction company, hired family members to assist him on projects, and paid them cash from the payments he received from Defendants. Defendants' payroll records previously produced in discovery show that Marquis and his family members were contract labor.[15] Billy Marquis's deposition testimony indicates that he often supervised the others work, which is consistent with a contractor/subcontractor relationship. Moreover, Billy stated on his check that he would accept the work so he and his subcontractors could perform the work.[16] The evidence is undisputed that Billy Marquis and his family members are Independent Contractors and therefore not entitled to any relief under the Fair Labor Standards Act.

### B. Extent of Relative Investments of the Worker and Alleged Employer

---

[11] Plaintiff Billy Marquis Deposition Testimony, page 24, lines 17 – 24.
[12] Plaintiff Billy Marquis Deposition Testimony, page 90, lines 9 – 11.
[13] Plaintiff Billy Marquis Deposition Testimony, page 95, lines 2 – 5.
[14] Plaintiff Billy Marquis Deposition Testimony, page 27, lines 19 – 23.
[15] Exhibit to Marquis' Declaration. Bates labeled Marquis 00001-00004; 00066-00070.
[16] Declaration of Amy Sadeghian, Exhibit C.

Billy Marquis's *only* conceivable investment in Defendants' business consisted of working on the houses, however, he was paid for these services. In order to be considered an independent contractor, the person in question must have made some investment or undertaken some risk, which is significant in nature and related to the employer's business. Plaintiff Billy Marquis and his relatives, whom he hired in connection with his construction company, invested in his own business, which is consistent with Plaintiff classified as an independent contractor. As such, Plaintiffs do not have standing to seek relief under the Fair Labor Standards Act.

### C. Worker's Opportunity for Profit or Loss is Determined by Alleged Employer

Plaintiff Billy Marquis had the ability to make decisions and use his own managerial skill and initiative to determine whether or not he received more pay. Billy Marquis's autonomy in this regard is integral in determining whether or not he is an independent contractor. In order to be considered an independent contractor, the person in question has to have the opportunity for profit or loss. Billy understood his compensation as a contractor as follows[17]:

Q: So what was your understanding originally of your pay compensation structure?

A: About $4,000 a month…

In addition to receiving their normal pay, Defendants would pay discretionary bonuses to Billy Marquis and his team of subcontractors. Billy Marquis stated, "[w]e were getting a $100 every month. We would get $100 at the end of the month. We would get a $50 bonus in the middle of the month.[18] Therefore, Plaintiffs' claims should be dismissed with prejudice as Plaintiffs do not have standing to seek relief under the Fair Labor Standards Act because they are independent contractors.

### D. Skill and Initiative Required in Performing the Job

---

[17] Plaintiff Billy Marquis Deposition Transcript, pg. 9, lines 17 – 19.
[18] Plaintiff Billy Marquis Deposition Transcript, pg. 85, lines 8 – 10.

Billy Marquis owned his own construction company[19] and had experience in rehabilitating houses and making them better. He hired his own team of subcontractors to work with him, and chose the projects he wanted to work on.[20] In order to qualify as an independent contractor the person in question must demonstrate a business-like initiative, which Billy Marquis did, and use their skills in an independent way, which Billy also did. Therefore, Plaintiffs' claims should be dismissed with prejudice as Plaintiff Billy Marquis does not qualify for relief under the Fair Labor Standards Act because he is classified as an independent contractor and his family and friends were his subcontractors.

### E.  Permanency of the Job

Billy Marquis had the ability to work on projects for Khosrow but was not beholden to him and was never required to work for him exclusively. In order to qualify as an independent contractor, the person in question must have a separate business and could work on other projects, if they so chose to do so. Here, Billy Marquis owned his own contracting business[21] was able to do other work, if he wanted, and did work for others before he worked contract labor for Defendant:

> Q: So your business was Marquis Brothers?
>
> A: Marquis Brothers General Construction and Remodeling.

Billy Marquis worked on other projects and Defendants. In fact, in his resignation letter, he stated that Marquis Brothers would sub-contract to maintain Defendants' properties, once again showing that both he and his subcontractors were independent contractors and not entitled to relief under the Fair Labor Standards Act.[22]

---

[19] Section E of this Motion.
[20] Plaintiff Billy Marquis Deposition Transcript, pg. 14, lines 5 – 6.
[21] Plaintiff Billy Marquis Deposition Transcript, pg. 8, lines 22 – 24.
[22] Declaration of Amy Sadeghian, Exhibit B.

### F. Conclusion for FLSA

In *Swales v. KLLM Transport Services LLC*, 2021 WL 98229 (5th Cir. Jan. 12, 2021), the Court expressly rejected the 2-part Lusardi test applied by most federal courts in conditionally certifying a class under the FLSA. *Id*. at *5. As the *Swales* opinion states, the 5th Circuit applies the economic realities test to determine whether the plaintiffs and potential class members are employees or independent contractors. *Id. *8*. As shown by the above factors, Billy Marquis and his subcontractors would qualify as an independent contractors.[23] Therefore, Plaintiffs' claims should be dismissed with prejudice as Plaintiffs do not qualify for relief under the Fair Labor Standards Act because they are independent contractors.

**Negligence is Not Applicable as Plaintiff is Independent Contractor**

Defendant is not liable to Plaintiff for negligence of any kind because "owners of a property do "not have a duty to see that an independent contractor performs the work in a safe manner." *Redinger v. Living,* 689 S.W.2d 415, 418 (Tex. 1985). A duty of care for employees of independent contractors only arises when the ability to control that employee's actions exists. Defendants did not control what Plaintiffs did[24] Billy Marquis stated in his deposition testimony[25]:

Q: Okay. Did you ever submit an accident report?

A: I was not able to.

Q: Did you ever contact TWC about a workplace accident?

A: I went to the hospital and was in surgery and bedridden and for four months. I didn't do anything other than barely get to his office and help him with whenever he forced me to.

….

---

[23] Declaration of Amy Sadeghian, Exhibit C.
[24] Please see Paragraph entitled "Control Exercised by Alleged Employer" on Page 7 of Motion.
[25] Plaintiff Billy Marquis Deposition Transcript, pg. 58, lines 10 – 25, and pg. 59, lines 1-3.

Defendants' Motion for Summary Judgment                                              12

> Q: You did not submit any kind of workers' comp claim?
>
> A: No.
>
> Q: And the accident was when you fell at a site?
>
> A: Yes.

As stated above, Billy Marquis never filed any sort of complaint with any agency requesting compensation or augmentation of compensation during his recovery. Under Chapter 95 of the Texas Civil Practice and Remedies Code, a property owner, like Defendant, is not liable for injuries sustained by an independent contractor arising from the failure to provide a safe workplace unless: the property owner is somehow in control of the work performed, other than the right to start and stop the work or to inspect the progress; and the property owner had actual knowledge of the danger.[26] Here, it has been conclusively established that Billy Marquis and his subcontractors were independent contractors,[27] Defendants were not in control of the work performed and that they had no knowledge of the danger that caused the injury. Lastly, Charlie Jones stated in his affidavit that "[a]fter [B]illy befriended me he confided in me that he fell at home, but seized the opportunity make some cash in a settlement from Kamy Investments."[28] Billy Marquis fabricated his fall, and thus his entire negligence claim fails by his own lack of veracity, but according to the testimony of Charlie Jones, he used his situation to benefit by taking advantage of Defendants for a quick payday.

For this and the previous reasons stated, Defendants are not liable under either a premises liability or negligence claim. *Id.* Defendant respectfully requests that the Court dismiss Plaintiffs' negligence claim in its entirety and grant Defendants' Motion for Summary Judgment.

**Plaintiff is Not a Consumer, Therefore the DTPA Claim is Unwarranted**

---

[26] Texas Civil Practice and Remedies Code Section 95.003.
[27] Please see Paragraph entitled "Control Exercised by Alleged Employer" on Page 7 of Motion
[28] Declaration of Amy Sadeghian, Exhibit A.

Defendants' Motion for Summary Judgment                                                                                      13

Plaintiffs are not consumers under the Deceptive Trade Practices Act and therefore do not qualify for relief under the Act. Additionally, Plaintiffs did not properly assert or join these claims properly with their claims under the Fair Labor Standards Act. Moreover, the DTPA, on its face, should not be considered before the Court because 1) Plaintiff Billy Marquis and his subcontractors were working as independent contractors for Defendant and do not qualify as a business consumer; and 2) the residence in which Plaintiff Marquis lived was part of his compensation package as an independent contractor. To properly bring a DTPA claim, Plaintiff must qualify as a business consumer. A business consumer is defined as an individual or entity that seeks or acquires by purchase or lease, goods or services for commercial or business use.[29] Billy does not meet that requirement because he is not using goods or services for commercial or business use, but rather he was *providing* services. Inasmuch Plaintiff's DTPA claim is predicated upon claims of unconscionable conduct as a personal consumer of goods and services of a rental property paid to him as part of his compensation package as an independent contractor, his DTPA claim should be barred.

Moreover, the complaint on its face (Doc. 150-1, par. 4) shows that the alleged unconscionable course of conduct occurred in 2014, more than two years before the original complaint was filed on August 27, 2019, outside the two year statute of limitations of the DTPA. See Tex.Civ.Prac.& Rem.Code §17.565. The complaint is void of facts to show tolling or any continuing violation should apply; instead, the complaint's allegations (paragraphs 4-6, 12) show that Marquis was aware of the alleged misrepresentations shortly after he moved to North Texas and took residence at Izzy Lane.

---

[29] Texas Business and Commerce Code, Title 2, Chapter 17, Subchapter A, Section 44.

Defendants' Motion for Summary Judgment                                                                 14

In the alternative, even if the Court were to find that Billy Marquis had standing to bring a DTPA claim, Defendants assert that the required DPTA notice was not given by Billy Marquis prior to filing this claim. Under Texas Business and Commerce Code, notice of a DTPA claim must be given at least sixty (60) days before commencement of an action. Here, the litigation was initiated on August 27, 2019, with the "Complaint – Collective Action" (Doc. 1) being filed with the Court; however, on August 24, 2019, Plaintiffs' counsel sent via the postal service a "Deceptive Trade Practices Act Notice" to Defendant Khosrow Sadeghian[30]. In order to properly file a claim for Deceptive Trade Practices, the initiating party needs to give notice to the business at least sixty (60) days *before* filing suit. *Id.* Plaintiffs did not properly give notice to the Defendants as they filed the original complaint (Doc. 1) a mere three (3) days after mailing the DTPA notice. Under the Texas Business and Commerce Code the claims should be abated[31].

In the alternative, *even if* Plaintiffs had properly given notice[32], and he was a business consumer[33], the Defendants vehemently deny that they participated or engaged in any unconscionable course of conduct with respect to Billy Marquis or his subcontractors. Defendants never engaged in an unconscionable course of conduct with respect to the claimed injury[34]. The Complaint recites allegations of purported unconscionable conduct by Sadeghian, Billy Marquis lacks the requisite standing to pursue the DTPA claim.

The Court should find that Plaintiff's DTPA was groundless and brought for purposes of harassment, and award Defendants their reasonable attorney's fees and expenses pursuant to Tex.Civ.Prac.& Rem.Code § 17.50(c).

---

[30] Attached as Exhibit 1 to this Motion.
[31] Texas Business and Commerce Code, Title 2, Chapter 17, Subchapter A, Section 505.
[32] Defendants have shown that Plaintiffs violated the notice requirement of the DTPA by not properly waiting the sixty (60) day requirement.
[33] Defendants have shown that he is not a business consumer when bringing the DTPA action.
[34] Plaintiff Billy Marquis Deposition Transcript, pg. 13, lines 17 – 21.

Defendants' Motion for Summary Judgment                                                                                              15

**Defendants Did Not Commit Spoilation**

Plaintiffs have submitted zero evidence of any wrongdoing related to the intentional destruction or spoilation of evidence by the Defendants. There is no factual basis underlying Plaintiff's assertion on information and belief that Defendants have committed spoilation of evidence. In *Adams v. City of Balcones Heights,* SA-03-CA-0219-XR, 2004 WL 1925444 at 9 (W.D. Tex. 2014), spoilation is not classified as an independent cause of action, as alleged by Plaintiff in Paragraph 14 of the Complaint (Doc. 150-1). Plaintiff confirms that Defendant did not commit spoilation[35]:

A: I mean, Amy, personally I don't think I've ever seen her destroy anything for me, Khosrow probably.

Q: Okay. Other than tearing up some papers and throwing them at you, are you aware of –

A: I mean, I really don't understand your statement so I'm giving you the best description I know of right now.

Even if spoilation could be plead as an independent cause of action, which it cannot, Plaintiff does not recollect a time in which there was a willful or intentional destruction of records. Therefore, this alleged cause of action should be immediately dismissed by summary judgment for failure to state a claim for which relief could be granted and asserting an independent cause of action that simply does not exist. Moreover, Plaintiff has completely failed to plead factual evidence adequate under the *Iqbal/Twombley* standard for any spoilation instruction to be given to the jury in this matter.

## CONCLUSION

---

[35] Plaintiff Billy Marquis Deposition Transcript, pg. 114, lines 11 – 18.

Defendants' Motion for Summary Judgment                                                                                     16

For all of the foregoing legal and factual reasons Defendants request this Court to grant Defendants' motion for summary judgment and that this case be dismissed with prejudice. In the alternative, Defendants request partial summary judgment on their defenses that are deemed appropriate by the Court. Defendants request such other and further relief to which they are entitled related to the subject matter of this Motion, including an award of their reasonable attorneys' fees and expenses under

Respectfully Submitted,

Clark Firm, PLLC
5445 La Sierra Drive, #415
Dallas, Texas 75231
T: (214) 890-4066
F: (214) 853-5458
http://www.dfwlaborlaw.com

_____
**Steven E. Clark**
sclark@dfwlaborlaw.com
State Bar No. 04294800
**Matthew J. Altick**
maltick@dfwlaborlaw.com
State Bar No. 24113528

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that, on November 23, 2022, a copy of Defendants' Motion for Summary Judgment was served via the Court's electronic filing system upon the following counsel for Plaintiffs:

Gene DuBose
gene@duboselegalgroup.com
DuBose Law Group
3816 Acapulco Court
Irving, Texas 75062

_____
Matthew J. Altick