IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BILLY MARQUIS *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 4:19-cv-626-KPJ |
| | § | |
| KHOSROW SADHEGIAN and | § | |
| AMY JO SADHEGIAN, | § | |
| | § | |
| Defendants. | § | |

**OPINION AND ORDER**

Pending before the Court are Plaintiffs' Billy Marquis, Alexis Marquis, and Anthony Marquis's (together, "Plaintiffs") Motion to Strike (the "Motion to Strike Dr. Reynolds") (Dkt. 157), to which Defendants filed responses (Dkts. 167, 170), and Plaintiffs filed replies (Dkts. 168, 172); and Defendants Khosrow Sadhegian and Amy Jo Sadhegian's (together, "Defendants") Amended Motion to Strike (the "Amended Motion to Strike Dr. Fairchild") (Dkt. 171), to which Plaintiffs filed a response (Dkt. 173). For the reasons that follow, the Court finds the Motion to Strike Dr. Reynolds (Dkt. 157) and the Amended Motion to Strike Dr. Fairchild (Dkt. 171) are **DENIED**.

I.   **BACKGROUND**

On June 8, 2022, Plaintiffs timely disclosed Dr. Keith Wm. Fairchild ("Dr. Fairchild") as an expert witness regarding Plaintiffs' damages and provided to Defendants an accompanying expert report. *See* Dkts. 148, 149. On July 27, 2022, Defendants disclosed Dr. Helen Reynolds ("Dr. Reynolds") as an expert to rebut Dr. Fairchild. *See* Dkt. 155. Defendants did not provide an accompanying expert report at the time they filed their disclosure. *See id*. The deadline for Defendants' disclosure of expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2)

1

and Local Rule CV-26(b) was July 28, 2022. *See* Dkt. 148 (the "Third Amended Scheduling Order"). On September 14, 2022, Defendants provided to Plaintiffs a witness report for Dr. Reynolds. *See* Dkt. 170-1.

## II.     LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FED. R. EVID. 702.

Federal Rule of Evidence 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the Rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are afforded broad discretion in making Rule 702 determinations. *See Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). The party offering the expert's testimony has the burden to prove: (1) the expert is qualified; (2) the testimony is relevant to an issue in the case; and (3) the testimony is reliable. *Daubert*, 509 U.S. at 590–91. Although the Fifth Circuit and other courts have identified various factors, the common nature of these factors directs the trial court to consider as its ultimate inquiry whether the expert testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Under Federal Rule of Civil Procedure 26(a)(2)(B), if a witness is "retained or specially employed to provide expert testimony," then the party proffering the witness must provide a written report with certain required information. FED. R. CIV. P. 26(a)(2)(B). Where a party fails to comply with Rule 26(a)(2)(B), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or harmless." FED. R. CIV. P. 37(c)(1). Once the court has entered a scheduling order and the relevant deadline has passed, Federal Rule of Civil Procedure 16(b) governs the court's decision regarding whether to permit a post-deadline amendment. *See* FED. R. CIV. P. 16(b). Rule 16(b) provides: "A schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4).  In determining whether the movant has established "good cause" for extension of a deadline, the Court considers four factors: (1) the party's explanation for the requested extension; (2) the importance of the requested extension; (3) the potential prejudice in granting the extension; and (4) the availability of a continuance to cure such prejudice. *Leza v. City of Laredo*, 496 Fed. App'x 375, 376 (5th Cir. 2012) (citing *Reliance Ins. Co. v. La. Land & Expl. Co.*, 110 F.3d 253, 257 (5th Cir. 1997)).

### III.   ANALYSIS

**A.   Motion to Strike Dr. Reynolds**

The deadline set by the Court for disclosure of Defendants' expert testimony pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) was July 28, 2022. *See* Dkt. 148. While Defendants timely disclosed Dr. Reynolds on July 27, 2022, Defendants did not provide to Plaintiffs an accompanying written expert report by July 28, 2022. *See* Dkt. 155. Plaintiffs argue Dr. Reynolds should be struck because Defendants did not timely provide an accompanying written report. *See* Dkt. 157 at 1. Defendants argue they were not required to provide an expert report for Dr.

Reynolds. *See* Dkt. 170 at 3. Defendants argue in the alternative that, if they did have to provide an expert report for Dr. Reynolds, the Court should modify the Third Amended Scheduling Order to allow more time for Defendants to produce an expert report, as Defendants had good cause to miss the deadline. *See* Dkt. 167 at 2. Defendants argue such an extension is warranted because of Defendants' diligence and Plaintiffs' alleged evasiveness in response to Defendants' good faith efforts, the prejudice Defendants would suffer if their expert was stricken, and the lack of hindrance on the overall proceedings such an extension would have. *See id.* at 3–4.

Defendants argue, "FRCP 26(a)(2)(C) addresses the disclosure requirements for an expert witness who is not required to provide an expert report, as defense counsel advised Plaintiffs' counsel before this Motion was filed. Defendants' rebuttal expert disclosure meets the requirements of FRCP 26(a)(2)(C). Compare with FRCP 26(a)(2)(B)." Dkt. 170 at 2. This statement notwithstanding, Defendants do not provide any argument or authority as to why the disclosure requirements for Dr. Reynolds are governed by Rule 26(a)(2)(C), as opposed to Rule 26(a)(2)(B).

The Court is not certain how Dr. Reynolds's status as "a designated rebuttal expert on damages" would make her disclosure subject to Rule 26(a)(2)(C) (meaning that no written report would be needed), as opposed to Rule 26(a)(2)(B). In their original disclosure of Dr. Reynolds, Defendants state Dr. Reynolds is expected to testify as a rebuttal witness. *See* Dkt. 155 at 1. This clearly means Dr. Reynolds is "one retained or specially employed to provide expert testimony in the case." FED. R. CIV. P. 26(a)(2)(B). For such a witness, a written report is necessary "[u]nless otherwise stipulated or ordered by the court." *Id.* There has been no stipulation or order by the Court that a written report is not necessary for Dr. Reynolds. Therefore, the written report

4

requirement of Rule 26(a)(2)(B) is applicable to the disclosure of Dr. Reynolds; hence the Court will analyze whether Defendants have established "good cause" for an extension of its deadline.

*1. Defendants' Explanation*

In assessing good cause, the trial court primarily considers the diligence of the party seeking to alter the existing schedule. *Alexander v. Martin*, No. 2:08CV400, 2010 WL 11531247, at *3 (E.D. Tex. June 24, 2010) (citing *Deghand v. Wal-Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995)). The party's explanation for seeking relief from the schedule must demonstrate it could not have met the deadline despite its diligence. *Id.*

In this case, Defendants contend they have been "extremely diligent in trying to avoid delays and [have] made several good faith attempts to depose Plaintiff[s'] expert." Dkt. 167 at 3. Defendants further allege, "Plaintiff[s] [have] continually evaded Defendant[s'] good faith efforts to have Plaintiff[s'] expert deposed to only then turn around to this Court and cry wolf using a veiled Rule 26(a)(2)(B) violation when Plaintiff[s'] lack of cooperation was directly related to Defendant[s'] experts' ability to adhere to the terms of the Scheduling Order and Rule 26(a)(2)(B)." *Id.* Defendants argue they were "factually estopped from being able to adhere to the Scheduling Order or Rule 26(a)(2)(B) for that matter because even though Defendant[s] had disclosed the expert [they] intended to use the expert was not able to give a report because Defendant[s] has not yet had the opportunity to depose Plaintiff[s'] expert." *Id.*

Defendants provide neither evidence nor specifics regarding their alleged diligence and Plaintiffs' alleged lack thereof. For their part, Plaintiffs represent that Defendants' counsel, Steven E. Clark ("Mr. Clark"), originally emailed Plaintiffs' counsel, Eugene Zemp DuBose ("Mr. DuBose"), the following: "'Just a reminder that I need dates in July to depose your expert,' but 10 days later noticed Dr. Fairchild's deposition not for a day in July, but for August 26, 2022." Dkt.

5

168 at 1–2. Plaintiffs represent that when "Mr. Clark designated Dr. Reynolds as [Defendants'] expert, [Mr. DuBose] sent Mr. Clark an email stating that the federal rules required [Dr. Reynolds] to provide a report with her designation," to which Mr. Clark responded that the federal rules did not require a written report. *Id.* at 2. Plaintiffs believe Defendants' missing the deadline was due to Defendants' misconstruction of the law and Defendants' allegations of Plaintiffs' evasion of Defendants' good faith efforts are a cover for the misconstruction. *See id.* at 1–2.

The Court is not in a position at this time to make a definitive factual conclusion as to what factors actually caused Defendants to miss their deadline to provide their report for Dr. Reynolds. The Court does note that it has representations of emails between the parties' attorneys, which support Plaintiffs' theory, and the Court does not have any representation from Defendants that such emails are not authentic. Further, Defendants' allegations of Plaintiffs' evasiveness are unsupported. The Court notes it takes seriously allegations of attorney bad faith and expects such allegations to be, at the very least, specifically alleged and accompanied by evidence.

Additionally, Defendants contend they were "factually estopped"[1] from timely filing a witness report "because Defendant[s] ha[d] not yet had the opportunity to depose [Plaintiffs'] expert." Dkt. 167 at 3. Simply put, this asserted reason is not a basis for failing to timely provide an expert report. While it stands to reason that it may be helpful for a rebuttal witness to have access to a deposition of the witness she is rebutting, it is simply not the case that the lack of such a deposition makes preparing a rebuttal witness impossible. Defendants do not cite any authority for such a general proposition, and they do not provide any specific facts as to why in this case it

---

[1] It is not clear what exactly is meant by this phrase. The court will construe it to mean "factually impossible."

was impossible (or even why it was more difficult) for Dr. Reynolds to prepare her report without having access to a deposition of Dr. Fairchild.[2]

Therefore, the first factor weighs in Plaintiffs' favor.

*2. The Importance of the Requested Extension*

Defendants are not explicit as to the importance of the requested extension to file their disclosure report for Dr. Reynolds. *See* Dkt. 167 at 3–4. However, construing Defendants' responses as a whole, the Court concludes the requested extension is important, as the extension (or lack thereof) is determinative as to whether an expert will be struck or admitted.

Therefore, the second factor weighs in Defendants' favor.

*3. Potential Prejudice*

Defendants contend they will be "extremely prejudiced in that [they] will be unable to have a rebuttal expert, if needed, to contradict Plaintiff[s'] expert." *Id.* at 4. The lack of such an expert likely will not "extremely" prejudice Defendants, as this expert would not be a part their case-in-chief, as Defendants acknowledge. *See id.* However, the lack of such an expert would render Defendants unable to use their own expert to counter Plaintiffs' expert on the important issue of damages.

Therefore, the third factor weighs in Defendants' favor.

*4. The Availability of a Continuance to Cure Such Prejudice*

Defendants assert they "plan[] to use [their] expert for rebuttal purposes only which also weighs in favor of there being little to no interruption to the case as a whole and weighs heavily in favor of a continuance." *Id.* The Court agrees with this general argument and adds the following

---

[2] Plaintiffs assert that, given certain statements made by Dr. Fairchild in her declaration, "it is fair for the court to accept [Dr. Reynolds's] silence as her imprimatur that Dr. Fairchild's report is without error." Dkt. 168 at 2–3. At this time, the Court declines to adopt such an inference.

facts as applicable specifically to this case. The Parties jointly represented that the deposition of Dr. Fairchild was scheduled for August 29, 2022. *See* Dkt. 161.[3] It appears this deposition occurred, as on September 14, 2022, Defendants provided Plaintiffs an expert witness report for Dr. Reynolds. *See* Dkt. 170. While the Court has not reviewed this report, as it was untimely provided to Plaintiffs and no continuance has been granted as of yet, the Court notes the report for Dr. Reynolds has already been provided to Plaintiffs. Given that the report has already been provided to Plaintiffs, the report is of a rebuttal witness, and the trial is scheduled to begin on April 17, 2023, *see* Dkt. 169, the Court finds a continuance would be available without significantly prejudicing Plaintiffs in their preparation for trial or interrupting the pretrial schedule.

Therefore, the fourth factor weighs in Defendants' favor.

Overall, the first factor weighs in favor of granting the Motion to Strike Dr. Reynolds, while the other factors weigh in favor of denying the motion. Considering that the expert is of rather high importance and the prejudice to Plaintiffs in their trial preparations will be negligible, if any, the Court denies the Motion to Strike Dr. Reynolds. The Court advises the parties that, barring emergency circumstances, it will not consider future untimely filings.

### B. Amended Motion to Strike Dr. Fairchild

Defendants move to strike Dr. Fairchild on the general grounds that "[t]he Fairchild expert witness report is deficient . . . because of the failure of the Fairchild report to include several key facts or information to support [Dr. Fairchild's] economic model for each of the named Plaintiffs . . . ." Dkt. 171 at 2.

---

[3] The Court notes the Joint Motion to Amend Third Scheduling Order ("Joint Motion to Amend") indicated this scheduled date for the deposition of Dr. Fairchild, but the only request in the Joint Motion to Amend was to continue the deadline for dispositive motions; that is, there was no request to continue the deadline for filing discovery disclosures. *See id.*; *see also* Dkt. 168 at 3.

Defendants assert various methodological faults with Dr. Fairchild's report (the "Fairchild Report"), which include: (1) not relying on either of Billy Marquis's depositions and instead relying on one of Billy Marquis's declarations; (2) using different start dates, without explanation, for Dr. Fairchild's different economic summaries of Billy Marquis, which results in inconsistent and incorrect life expectancies; (3) failing to state a tax rate for economic loss models; (4) not explaining the assumption that Billy Marquis would be able to resume his career as a long-haul truck driver; (5) not showing Dr. Fairchild is a qualified vocational expert; and (6) not offering information as to whether the Fairchild Report's source data was for an owner-operator, employee, or some combination of the two. *See id.* at 2–3.

In his declaration responding to Defendants' Amended Motion to Strike, Dr. Fairchild clarifies the methods he utilized in creating the Fairchild Report. He discusses how he reached his life expectancy figure for Billy Marquis, which tax rate he used and why he used it, and which source data he used and why he used it. *See* Dkt. 173-1 at 2–6. Further, Dr. Fairchild indicates that his calculations were based on generally accepted practices of his profession. *See id.* at 7; *see also Mata v. Lowe's Home Ctrs., Inc.*, SA-04-CA-0691, 2006 WL 5159392, at *3 (W.D. Tex. Feb. 9, 2006) (finding in a different case that Dr. Fairchild's method was acceptable, as it was a method accepted by members in his field). Overall, Defendants point out various perceived faults with the Fairchild Report, but Defendants do not provide supporting reasons or legal authority as to why those faults render the Fairchild Report unreliable. For example, it is not facially clear why relying on a deposition in addition to or in lieu of a declaration would make the Fairchild Report more reliable, and Defendants do not elaborate on the argument.

Defendants' assertion that Dr. Fairchild did not explain his assumption that Billy Marquis would be able to resume his career as a long-haul truck driver warrants additional discussion.

9

Defendants contend that truck driving is not the appropriate occupation on which to base Billy Marquis's lost earnings estimate because Billy Marquis (1) suffered a severe leg injury, and (2) voluntarily left his trucking job for a construction job. *See* Dkt. 171 at 2–3. As to the first objection, the Court finds Defendants' contention unpersuasive. The purpose of an economic loss estimate is to provide an estimate of what an individual would have earned but for the alleged injury. *See Overcoming Word Praise Ctr., Intl. v. Phila. Indem. Ins. Co.*, 7:15-CV-60-O, 2015 WL 11120668 (N.D. Tex. Oct. 13, 2015) (allowing an expert to testify on the profits plaintiff would have made but for the injury allegedly caused by the defendants). Further, an expert witness on damages is allowed to assume the liability of the opposing party. *See Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 792 (N.D. Tex. 2013) ("Experts are permitted to assume the fact of liability and opine about the extent of damages.") (citing *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 737, 741 (N.D. Ill. 2009)).

As to the second objection, in response to Defendants' contention that truck driving is not the appropriate occupation, Dr. Fairchild states that "the appropriate method is to look at what [Billy] Marquis had done in the past in order to calculate what he could have earned had he been able to continue in that career . . . . In the alternative, Billy Marquis' experience doing construction work could be considered." Dkt. 173-1 at 5. Defendants establish that construction is Billy Marquis's most recent occupation, but they do not elaborate on why his previous occupation (truck driving) is necessarily inappropriate to be considered for his damages calculation. Meanwhile, Dr. Fairchild states he "do[es] not hold himself out as a vocational expert" and assumes that because Billy Marquis was a truck driver in the past, such an occupation is an appropriate occupation on which to calculate damages. *Id.* at 4.

Thus, it is contested whether truck driving or construction is the appropriate occupation on which Dr. Fairchild should base his estimates for Billy Marquis. As to this objection and all other objections to the Fairchild Report, the Court finds they are best explored on cross-examination. *See Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence."). Therefore, the Court denies the Amended Motion to Strike Dr. Fairchild.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that the Motion to Strike Dr. Reynolds (Dkt. 157) and the Amended Motion to Strike Dr. Fairchild (Dkt. 171) are **DENIED**.

**So ORDERED and SIGNED this 12th day of January, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE