IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BILLY MARQUIS, *et al.*, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:19-cv-626-KPJ |
| KHOSROW SADEGHIAN and AMY SADEGHIAN, | § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Amy Sadeghian and Khosrow Sadeghian's (collectively, "Defendants") Motion for New Trial on Plaintiff's Premises Liability Claim and Supporting Brief (the "Motion for New Trial") (Dkt. 269), to which Plaintiff Billy Marquis filed a response (the "Response") (Dkt. 270), and Defendants filed a reply (the "Reply") (Dkt. 271). For the following reasons, the Motion for New Trial (Dkt. 269) is **DENIED**.

### I. BACKGROUND

This lawsuit proceeded to a jury trial on April 17, 2023. Plaintiffs presented multiple causes of action, including a claim for premises liability as defined under Texas law. After a six-day trial, the jury returned a verdict in favor of Billy Marquis on his premises liability claim, awarding him $45,240 in physical pain and mental anguish damages sustained in the past, $45,240 in future physical pain and mental anguish damages, $30,077.22 in medical care expenses, and $30,077.22 in future medical care expenses. *See* Dkt. 247 at 6–7.

## II.     LEGAL STANDARD

The Court has discretion in determining whether to grant a motion for new trial under Federal Rule of Civil Procedure 59. *Weber v. Roadway Express, Inc.*, 199 F.3d 270, 276 (5th Cir. 2000). Pursuant to Rule 59, the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). For instance, the Court has discretion to grant a new trial when it is necessary to prevent an injustice, when the jury's verdict is against the manifest weight of the evidence, when the trial was unfair, when prejudicial error occurred, or when the Court finds the damages imposed by the jury were excessive. *See Gov't Fin. Servs. One Ltd. P'ship v. Peyton Place, Inc.*, 62 F.3d 767, 774–75 (5th Cir. 1995); *Jones v. Wal-Mart Stores, Inc.*, 870 F.2d 982, 986 (5th Cir. 1989); *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612 (5th Cir. 1985). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Sibley v. Lemaire*, 184 F.3d 481, 487 (5th Cir. 1999) (quoting *Del Rio Distrib., Inc. v. Adolph Coors Co.*, 589 F.2d 176, 179 n.3 (5th Cir. 1979)). In reviewing jury answers to special verdicts, "the court must view the evidence in the light most favorable to upholding the jury's decision." *See Ellis v. Weasler Eng'g Inc.*, 258 F.3d 326, 343 (5th Cir. 2001) (citing *Hiltgen v. Sumrall*, 47 F.3d 695, 701 (5th Cir. 1995)). Further, under Fifth Circuit precedent, to meet their burden that the "verdict is against the great weight of the evidence," the movants "must show 'an absolute absence of evidence to support the jury's verdict.'" *Seibert v. Jackson County*, 851 F.3d 430, 439 (5th Cir. 2017) (quoting *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir. 1998)).

## III.     ANALYSIS

**A.     Error**[1]

In the Motion for New Trial (Dkt. 269), Defendants' first argue that the theory of recovery on Billy Marquis's negligence cause of action was "incorrect." Dkt. 269 at 2. Specifically, Defendants argue that Billy Marquis's only basis for recovery was premises liability and that because he was a general contractor, Amy Sadeghian owed him no duty. *Id.* at 2–4. The Court finds these arguments to be unfounded because (1) the Jury Instructions (Dkt. 244) and Jury Verdict Form (Dkt. 247), which communicated Billy Marquis's theory of recovery on negligence, were submitted to the jury without objection, and (2) the Jury Instructions (Dkt. 244) and Jury Verdict Form (Dkt. 247) included the necessary instructions and questions regarding both premises liability and Billy Marquis's status as either an employee or independent contractor. *See* Dkts. 244; 247.

Leading up to trial, the Court accepted proposed jury instructions from both Plaintiffs and Defendants on the causes of action to be presented to the jury. *See* Dkts. 195; 198; 203–04; 210; 212; 224; 233; 238. Defendants disagreed with Plaintiffs' proposed jury instruction on Billy Marquis's negligence claim and filed a Notice of Areas of Disagreement with Proposed Jury Charges (Dkt. 221) and a Trial Brief on Premises Liability (Dkt. 205), wherein Defendants argued that Billy Marquis's "only possible explanation for his claimed injuries is a premise[s] liability claim." Dkt. 205 at 2. Given the number of proposed jury instructions and disagreements between the parties regarding the same, the Court held a conference with both parties to discuss the jury instructions and jury verdict form. During the conference, the Court made revisions in accordance with the parties' mutual agreement and defined Billy Marquis's negligence claim as a Texas state-

---

[1] Defendants' arguments on this issue are an almost word-for-word, direct copy of their Trial Brief on Premises Liability (Dkt. 205).

3

law premises liability claim. Thereafter, the Court provided the proposed jury instructions and verdict form to the parties' counsel for review, and neither party made any objection or requested further revisions. At the close of evidence, but prior to jury deliberation, the Court inquired again as to whether either party had objections to the Jury Instructions (Dkt. 244) or the Jury Verdict Form (Dkt. 247) and neither party asserted any objection. *See* Dkt. 242. Accordingly, the Jury Instructions (Dkt. 244) and the Jury Verdict Form (Dkt. 247), which defined Billy Marquis's claim for premises liability negligence, were submitted to the jury without objection.

Because Defendants did not object at trial, they have waived their right to challenge the Jury Instructions (Dkt. 244) and the Jury Verdict Form (Dkt. 247). Under Federal Rule of Civil Procedure 51, any objection to a court's jury instructions must be asserted on the record and must "stat[e] distinctly the matter objected to and the grounds for the objection." FED. R. CIV. P. 51(c). "[A] party may not later assert that there is an error in a given jury instruction if that party failed to properly object to it during trial." *Baker v. City of McKinney*, 624 F. Supp. 3d 653, 661 (E.D. Tex. 2022) (first citing FED. R. CIV. P. 51(d)(1); then citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007)), *vacated and remanded on other grounds*, 84 F.4th 378 (5th Cir. 2023); *see Smith v. Kansa Tech., LLC*, No. 16-16597, 2018 WL 2219370, at *2 (E.D. La. May 15, 2018) ("A party must object at trial to a jury instruction or jury verdict form otherwise the right to challenge is waived." (citing *Tex. Beef Grp. v. Winfrey*, 201 F.3d 680, 689 (5th Cir. 2000)); *Jackson v. State Farm Fire & Cas. Co.*, No. 21-cv-2117, 2023 WL 6064819, at *1 (W.D. La. Mar. 28, 2023) ("Failing to timely object to a jury instruction 'until after the verdict has been returned and the jury has been discharged' waives the right to object to any alleged error with the instruction." (cleaned up) (quoting *Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486, 489 (5th Cir. 1987))). "Further, '[a] party cannot satisfy the requirements of Rule 51 by merely submitting to

4

the court a proposed instruction that differs from the instruction ultimately given to the jury.'" *Baker*, 624 F. Supp. 3d at 661 (alteration in original) (quoting *Russell v. Plano Bank & Tr.*, 130 F.3d 715, 719 (5th Cir. 1997)). Thus, Defendants have waived their right to challenge the Jury Instructions (Dkt. 244) and Jury Verdict Form (Dkt. 247). *See Jackson*, 2023 WL 6064819, at *1 (finding the plaintiffs' failure to object to a jury instruction was sufficient alone for the Court to deny the Rule 59(a) motion); *Smith*, 2018 WL 2219370, at *2 ("[The] [p]laintiff waived her right to challenge the . . . jury instructions[] and jury verdict form when she failed to timely object at trial, despite the numerous opportunities the Court provided to raise such objections." (citation omitted)).

Moreover, even if Defendants had not waived their right to challenge the Jury Instructions (Dkt. 244) and the Jury Verdict Form (Dkt. 247), Defendants identify no error in these documents within the Motion for New Trial (Dkt. 269). Indeed, upon review, the Court finds that there was no error in the Jury Instructions (Dkt. 244) and the Jury Verdict Form (Dkt. 247). The Jury Instructions (Dkt. 244) instruct the jury on the very law that Defendants argue was Billy Marquis's "only basis for recovery"—Texas premises liability. *Compare* Dkt. 244, *and* Dkt. 247, *with* Dkt. 269 at 1–4. The final Jury Instructions (Dkt. 244) clearly reference Billy Marquis's negligence theory of recovery as one of "State-Law Premises Liability Negligence." Dkt. 244 at 15. The Jury Instructions (Dkt. 244) then define premises liability following the Texas Pattern Jury Charges. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES: MALPRACTICE, PREMISES & PRODUCTS PJC 66.4 (2022). The Jury Instructions (Dkt. 244) did not include instructions for any negligence claim apart from the premises liability claim. *See* Dkt. 244 at 15–19. Furthermore, the Jury Verdict Form (Dkt. 247) included questions pertaining only to premises liability negligence. *See* Dkt. 247 at 6–7. Thus, the Jury Instructions (Dkt. 244) included

the requested instruction on a premises liability theory of recovery and the Jury Verdict Form (Dkt. 247) queried the jury on a premises liability cause of action, just as Defendants advocated and the parties agreed.

The Jury Instructions (Dkt. 244) also define when a person is an employee and when a person is an independent contractor, following the Texas Pattern Jury Charges. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES: GENERAL NEGLIGENCE, INTENTIONAL PERSONAL TORTS & WORKERS' COMPENSATION PJC 10.1, 10.8 (2022). The Jury Verdict Form (Dkt. 247) asks the jury to determine whether Billy Marquis "was . . . acting as an employee or an independent contractor" when he was working on the night he sustained his injury. Dkt. 247 at 6. The Jury Verdict Form (Dkt. 247) instructs the jury that if it determines that Billy Marquis was acting as an employee, then they should continue onto the next question. *Id.* But if they determine that Billy Marquis was acting as an independent contractor, then they should not answer the remainder of the questions regarding Billy Marquis's premises liability claim. *Id.* Thus, if the jury were to have found that Billy Marquis was acting as an independent contractor, then Billy Marquis would not have recovered on his premises liability claim. This is consistent with Defendants' contention in the Motion for New Trial (Dkt. 269) that Amy Sadeghian would not have owed a duty to Billy Marquis if he was acting as an independent contractor. *See* Dkt. 269 at 3–4. Accordingly, the Jury Instructions (Dkt. 244) included the proper instructions and the Jury Verdict Form (Dkt. 247) included the proper questions for determining whether Billy Marquis was acting as an independent contractor or an employee.[2] For this reason,

---

[2] Defendants appear to actually take issue with the jury's determination that Billy Marquis was acting as an employee, rather than an independent contractor, when the injury occurred. *See* Dkt. 269 at 3–4. However, Defendants have not challenged Billy Marquis's status as an employee of Defendants on the basis of insufficient evidence. *See id.* The Court made clear in denying Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment, with Brief in Support (Dkt. 176) that there was an issue of fact regarding Billy Marquis's employment status as either an employee or independent contractor and thus, the question must be submitted to the jury. Dkt. 206

in addition to the reasons stated above, there is no error in the theory of recovery presented to the jury at trial.

**B.     Insufficient Evidence**

Defendants also request the Court either set aside the jury's verdict or grant a new trial on Plaintiff's premises liability claim because the evidence was insufficient to support the jury's findings in favor of Plaintiff. *See* Dkt. 269 at 7. "Under Texas law, property owners generally 'have a duty to protect invitees from, or warn them of, conditions posing unreasonable risks of harm if the owners knew of the conditions or, in the exercise of reasonable care, should have known of them.'" *Bisacca v. Pilot Travel Ctrs., LLC*, 476 F. Supp. 3d 429, 434 (N.D. Tex. 2020) (quoting *Henkel v. Norman*, 441 S.W.3d 249, 251 (Tex. 2014)). "To establish a premises liability claim, an invitee must prove:

> (1) the property owner had actual or constructive knowledge of the condition causing the injury;
>
> (2) the condition posed an unreasonable risk of harm;
>
> (3) the property owner failed to take reasonable care to reduce or eliminate the risk; and
>
> (4) the property owner's failure to use reasonable care to reduce or eliminate the risk was the proximate cause of injuries to the invitee.

*Id.* (quoting *Henkel*, 441 S.W.3d at 251–52). Defendants challenge each element of Billy Marquis's premises liability, asserting there was no evidence or insufficient evidence to support

---

at 18–19. At trial, the jury found, upon proper instruction, that Billy Marquis was in fact an employee and not an independent contractor. Dkts. 244 at 15–16; 247 at 6. Without a challenge to the sufficiency of the evidence supporting the jury's conclusion, the Court will not disturb the jury's finding. Moreover, even if Defendants had challenged the sufficiency of the evidence on this point, the evidence at trial was clearly sufficient to support a finding that Billy Marquis was Defendants' employee.

the jury's verdict.[3] Dkt. 269 at 5–7. The Court disagrees and finds that the evidence was sufficient to support each element of Billy Marquis's premises liability claim and ultimately the jury's verdict in favor of Billy Marquis.

At trial, the jury was presented with evidence of the following[4]: On February 26, 2018, Billy Marquis received a call from Amy Sadeghian around 6:00 p.m., instructing Billy Marquis to go to the property located at 1317 Norman Street, Denton, Texas (the "Property") to close off the roof and back wall of the house, both of which were exposed to the elements. The Property was an active construction site, which Billy Marquis testified made the Property a dangerous place even in the light of day. Before Billy Marquis arrived at the Property that evening, another one of Defendants' construction crews was at the Property. While at the Property, the construction crew

---

[3] Defendants also argue that there was evidence of an affirmative defense—Billy Marquis's contributory negligence. However, this defense was never before the jury because it was not included in the Jury Instructions (Dkt. 247). Defendants did not object at trial regarding the omission of an instruction on contributory negligence and, even now, do not claim the omission as error in the Motion for New Trial (Dkt. 269). *See* Dkt. 269. Indeed, the Court finds that an instruction on contributory negligence would have been improper because Defendants, as non-subscribers to the Texas workers' compensation program, were barred by Texas labor laws from asserting a defense of contributory negligence. *See Yoakum v. Tyson Foods Inc.*, No. 22-cv-239, 2024 WL 2304833, at *4 (N.D. Tex. May 21, 2024) ("As a nonsubscriber, [the defendant] cannot defend this lawsuit by invoking contributory negligence . . . ."); *see also* TEX. LAB. CODE ANN. § 406.033(a) ("In an action against an employer by or on behalf of an employee who is not covered by workers' compensation insurance . . . , it is not a defense that: (1) the employee was guilty of contributory negligence . . . .").

An employee who is injured on-the-job has two options to pursue recovery from an employer: (1) if the employer is a subscriber in the Texas workers' compensation program, the employee's sole recovery is through the employer's workers' compensation insurance coverage, or (2) if the employer is a nonsubscriber in the Texas workers' compensation program, the employee may seek common-law remedies from his employer. *See Yoakum*, 2024 WL 2304833, at *3; *see also Austin v. Kroger Texas L.P.*, 746 F.3d 191, 197 (5th Cir. 2014) ("The Texas workers' compensation program therefore contemplates two systems—'one in which covered employees may recover relatively quickly and without litigation from subscribing employers and the other in which non-subscribing employers . . . are subject to suit by injured employees to recover for their on-the-job injuries.'" (citing *Tex. W. Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 187 (Tex. 2012))), *certified question answered*, 465 S.W.3d 193 (Tex. 2015). Thus, if Defendants did subscribe to the Texas worker's compensation program, Billy Marquis would have been prohibited from bringing a claim of negligence for his injury. Defendants never asserted that Billy Marquis was prohibited from pursuing his negligence claim due to their status as subscribers; thus, the conclusion follows that Defendants are non-subscribers.

[4] The Court's recitation of the facts comes from the Court's independent review of the unofficial rough draft transcripts of the trial. Neither party requested transcripts of the trial in preparing their briefing on the Motion for New Trial (Dkt. 269). Thus, neither party provided the Court with any citation to the record in their briefing. The Court, on its own volition, requested the unedited transcripts from the court reporter for the Court's independent review.

was tasked with redoing the framing around the back door of the house. To do this, the construction crew had to remove the beam and subfloor supporting the back door threshold. Although the crew had replaced the back door by the time Billy Marquis arrived on the Property the evening of his injury, they had not yet repaired the beam and subfloor.

After receiving Amy Sadeghian's instruction, but prior to arriving at the Property, Billy Marquis went to Home Depot to purchase siding for the house, which was necessary to complete the repair requested by Amy Sadeghian. Billy Marquis informed Amy Sadeghian that it would be dark at the Property by the time he arrived. Accordingly, Billy Marquis requested permission from Amy Sadeghian to purchase lighting for the Property. The purchase of lighting was approved by Amy Sadeghian on the condition that she would not purchase expensive lighting. The lighting that Amy Sadeghian approved and purchased for the Property consisted of two halogen 4x4 lights, which cost $20 each and did not provide sufficient light by which to see at night. After acquiring the lighting and siding, Billy Marquis went to the Property and began the requested work in the dark. Billy Marquis installed the lighting at the construction site, then began repairing the exposed back wall of the house. Billy Marquis had the assistance of two other employees of Defendants, both of whom were inexperienced in installing siding. Billy testified that the lack of lighting and the inexperience of the other two employees made the installation of the siding particularly difficult. As Billy Marquis and the other two employees were installing the siding, Billy Marquis stepped on the back door threshold which gave way because there was no beam and subfloor to support it. Billy Marquis's right foot fell through the floor, and he broke his leg in three places.

Billy Marquis was thereafter taken to the hospital. After resetting his broken leg was unsuccessful, it was determined that his leg required surgery to repair the breaks. The surgery involved a five-inch cut and the insertion of a metal bar and screws to fix his bones back in place.

The recovery from injury and surgery limited Billy Marquis's ability to drive and move around for several months. At the time of the trial, Billy Marquis testified that he still experienced, and would continue to experience for the rest of his life, significant pain and suffering in his leg, including pain that feels like "someone's jamming boards into my toes," as described by Billy Marquis; muscle cramping; swelling; and bruising. Billy further testified that the injury also affects his ability to walk, resulting in continuing pain in his knee, back, and hip.

The evidence cited above is clearly sufficient to establish each element of Billy Marquis's premises liability claim. Defendants' assertions that there was no evidence or insufficient evidence plainly misrepresents the evidence presented at trial and misunderstands the elements required to establish premises liability. For example, Defendants assert that "[Billy Marquis] presented no evidence or insufficient evidence at trial that Amy Sadeghian was the (sole) owner of the property. No evidence was offered to show that Amy Sadeghian had any ownership interest in the property, an essential element of the premises liability claim." Dkt. 269 at 6. This argument displays a misunderstanding of both the law and facts at issue in this case. First, Amy Sadeghian's duty to make the premises safe or to warn of dangerous conditions is not solely reliant on her ownership interest in the Property; rather, the duty arises if "the defendant possessed—that is, owned, occupied, or controlled—the premises where injury occurred." *Wilson v. Tex. Parks & Wildlife Dep't*, 8 S.W.3d 634, 635 (Tex. 1999) (citing *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986)); *see also Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 644 (Tex. 2016) ("[The] duty generally runs with the ownership or control of the property." (citation omitted)). Accordingly, Billy Marquis was required to adduce evidence at trial showing that Amy Sadeghian possessed the Property, which could be shown by her ownership of the Property or by her occupancy or control of the Property.

10

Second, the evidence presented at trial clearly established Amy Sadeghian's possession of the Property. The evidence included testimony that Defendants, including Amy Sadeghian, owned the properties for which they directed Billy Marquis and other employees to complete work. Further, the testimony showed that Defendants, including Amy Sadeghian, exercised control over the Property. The testimony at trial showed that Amy Sadeghian exercised general control over her employees' actions on Defendants' properties; she directed which employees were to go to which properties to complete the directed work. Further, on the night of the injury, Amy Sadeghian controlled Billy Marquis's actions and presence on the Property; she directed Billy Marquis to go to the Property and complete the patching of the roof and installing the siding. Amy Sadeghian expressly instructed Billy Marquis that the directed work had to be completed that evening and told him the type of lighting that could be purchased to illuminate the property. *See Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586, 592 (Tex. App.—Fort Worth 2008, pet denied) ("The control that the defendant had over the premises must relate to the condition or activity that caused the injury." (citing *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527–28 (Tex. 1997)). Thus, even if the jury had not heard evidence that Defendants owned the Property, the evidence demonstrating Amy Sadeghian's control over the Property was sufficient for the jury to determine that Amy Sadeghian possessed the Property. Altogether, the evidence at trial is clearly sufficient to meet Billy Marquis's burden in demonstrating that Defendants, including Amy Sadeghian, possessed the Property.

The remainder of Defendants' arguments demonstrate an analogously narrow view of the law and evidence at issue during the trial and thus, are similarly unavailing. *See* Dkt. 269 at 6–7. The Court has evaluated the evidence for itself and finds sufficient evidence to support the jury verdict in favor of Billy Marquis with respect to his premises liability claim. For this reason, in

addition to the reasons stated above, the Court finds that the jury's verdict was not contrary to the great weight of the evidence.

### IV. CONCLUSION

For the foregoing reasons, Defendants have failed to show they are entitled to the extraordinary relief provided for in Rule 59. **IT IS THEREFORE ORDERED** that the Motion for New Trial (Dkt. 269) is **DENIED**.

**So ORDERED and SIGNED this 23rd day of July, 2024.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE